CLESSON Y. CHIKASUYE, KEKOA D. KAAPU, BEN F. KAITO, EUGENE F. KENNEDY, GEORGE KOGA, HERMAN G. P. LEMKE, YOSHIRO NAKAMURA AND MATSUO TAKABUKI *v.* EILEEN K. LOTA, CLERK OF THE CITY AND COUNTY OF HONOLULU.

No. 4788.

DECEMBER 1, 1969.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON AND KOBAYASHI, JJ.

444

OPINION OF THE COURT BY MARUMOTO, J.

In this case, pursuant to our opinion filed on August 30, 1968, and reported in 50 Haw. 511, 444 P.2d 904, we entered a judgment on September 6, 1968, which provided:

"1. That the apportionment of members of the city council of the City and County of Honolulu provided in Article III, Sections 3-102 and 3-103, of the charter of the City and County of Honolulu, is invalid;

"2. That, notwithstanding the adjudication of invalidity set forth in (1) above, the election for councilmen at the general election to be held on November 5, 1968, shall be held pursuant to the apportionment provided in the charter of the City and County of Honolulu, but the term of office of each councilman elected at the general election to be held on November 5, 1968, shall terminate at twelve o'clock meridian on January 2, 1971;

"3. That this court shall retain jurisdiction over this matter and require the parties to report to it, not later than September 1, 1969, regarding the apportionment situation at that time, and this court will enter an appropriate order in the light of the report; and

"4. That in the interim, the parties may present to this court reports on any proposed apportionment plan for appropriate court action."

As stated in the opinion, the original parties in the case were eight of the nine councilmen, as plaintiffs, and the city and county clerk, as defendant. At the general election of November 5, 1968, three incumbent councilmen were reelected, and six new councilmen were elected to fill the remaining seats. The six new councilmen are now in the case, as additional plaintiffs, and so is the council, as additional defendant.

The case is before us at this time for consideration and action on the reports and apportionment plans presented to us pursuant to paragraphs 3 and 4 of the judgment. The reports and plans are as follows:

(a) Report of Walter H. Heen, Clesson Y. Chikasuye, George Koga, Ben F. Kaito, Mary George, and Herman J. Wedemeyer, six of the nine councilmen presently in office, apprising us of the adoption by the council of Resolution No. 310 and Committee of the Whole Report No. 34, the former by an affirmative vote of two-thirds of the council membership after three readings on separate days. Resolution No. 310 embodies an apportionment plan, which we will hereafter refer to as the council plan, providing for a council of eleven members, six to be elected at large and one from each of five single-member council districts. Committee Report No. 34 contains an explanation of the council plan and the procedures and guidelines used in formulating the plan.

(b) Report of the council, presenting Resolution No. 310 and Committee Report No. 34 to us.

(c) Plan of Yoshiro Nakamura, a former councilman, providing for a council of nine members, three

to be elected from each of three multi-member council districts.

(d) Plan of Brian L. Casey, a councilman presently in office, providing for a council of nine members, all to be elected at large.

(e) Plan of Charles M. Campbell, a councilman presently in office, providing for a council of nine members, five to be elected at large and one from each of four single-member council districts.

(f) Plan of Toraki Matsumoto, a councilman presently in office, providing for a council of eleven members, one to be elected from each of eleven single-member council districts.

Before discussing the reports and plans before us, we will briefly restate the nature of the authority of a court in correcting malapportionment and the principles governing the exercise of that authority. They are as follows: Once a court finds the existence of malapportionment, it has authority to fashion appropriate relief "in the light of well known principles of equity." *Baker* v. *Carr*, 369 U.S. 186, 250 (1962); *Reynolds* v. *Sims*, 377 U.S. 533, 585 (1964). However, the court will stay its hand until the political branch of government has had an opportunity to provide a timely remedy by resorting to established political procedure. *Reynolds* v. *Sims, supra,* 586. If the effectuation of a political remedy involves voter approval at an election, and submission to voters at an election provided by law will unduly delay the effectuation of the remedy, the court will order a special election. *Cf. Hughes* v. *WMCA, Inc.,* 379 U.S. 694 (1965); *Travia* v. *Lomenzo,* 381 U.S. 431 (1965). If it is finally determined that a political remedy will not be forthcoming in a timely manner, the court will step in and provide its remedy. *Reynolds* v. *Sims, supra,* 585.

In the case of the malapportionment here, the political

remedy is to amend the relevant charter provisions. At the present time, charter provisions may be amended under the amendatory procedure provided in the charter or by the State legislature in the exercise of its authority under the local government article of the State constitution recognized in *Fasi* v. *City and County of Honolulu,* 50 Haw. 277, 439 P.2d 206 (1968).

Since *Fasi* v. *City and County of Honolulu,* the local government article of the State constitution has been amended by the addition of the following paragraph:

"Charter provisions with respect to a political subdivision's executive, legislative and administrative structure and organization shall be superior to statutory provisions, subject to the authority of the legislature to enact general laws allocating and reallocating powers and functions."

However, this amendment will not take effect until January 1, 1972. Constitution of the State of Hawaii, Article VII, Section 2; Article XVI, Section 9.

The amendatory procedure under the charter involves initiation of a plan under § 13-101, and submission of the plan for voter approval under § 13-102. Under § 13-103, approval of the plan must be by a majority of the voters voting thereon.

Under § 13-101, an amendatory plan is initiated (a) by a resolution of the council adopted after three readings on separate days and passed by an affirmative vote of two-thirds of its entire membership, or (b) by a petition presented to the council, signed by qualified electors equal in number to at least ten per cent of the entire vote cast for mayor in the last mayoralty election.

The council plan is in a form ready for submission for voter approval, as a plan duly initated under § 13-101. The other plans are individual plans, and no more, and are not in a form appropriate for submission to the voters.

For that reason, we need not give further consideration to the individual plans at this time. With respect to the council plan, we may properly consider its constitutionality before ordering a special charter election, for if it contains any constitutional deficiency, its submission to the voters will be a wasteful and meaningless procedure.

We have carefully reviewed the council plan. Upon such review, it is our opinion that the plan meets all constitutional requirements and contains no constitutional deficiency. A mixture of at-large representation and district representation is constitutional. *Dusch* v. *Davis,* 387 U.S. 112 (1967). So is apportionment based on the number of registered voters under the circumstances existing in Hawaii. *Burns* v. *Richardson,* 384 U.S. 73 (1966). In the delineation of the council districts, the council has made "a good-faith effort to achieve precise mathematical equality," as required in *Kirkpatrick* v. *Preisler,* 394 U.S. 526 (1969), as shown by the following table:

### CITY COUNCIL OF HONOLULU
### COUNCILMANIC APPORTIONMENT PLAN
### AUGUST 19, 1969

| District | Registered Voters | Percentage Variation from Ideal |
|---|---|---|
| A | 37,550 | + 0.37% |
| B | 37,592 | + 0.48% |
| C | 37,517 | + 0.28% |
| D | 37,313 | − 0.27% |
| E | 37,090 | − 0.86% |

Ideal number of Registered Voters
per District ................................................. 37,412.4

Average Deviation from Ideal...................... 0.45%

Ratio of Largest to Smallest District......... 1.0135 to 1

Numerical Difference Between
Largest and Smallest District.............. 502 persons

The districts are compact. There has been no attack on the council plan on the ground that it evidences gerrymandering or other attempts at invidious discrimination of any social, economic, or ethnic group.

We will, therefore, enter an order directing the city and county clerk to conduct a special charter election not later than January 31, 1970, at which the council plan shall be submitted to the voters for their approval.

This decision is limited to the determination that the council plan meets constitutional requirements and is entitled to be submitted to the voters in furtherance of a political solution of the existing malapportionment.

In case the council plan is not approved by the voters, we will await action by the legislature at the regular session convening on January 21, 1970, and, if no legislative act becomes effective by May 1, 1970, we will then fashion a remedy upon consideration of all relevant factors and information, including the council plan and the individual plans submitted to us.

*Jack H. Mizuha* for plaintiff *Toraki Matsumoto.*

*Yoshiro Nakamura,* plaintiff in person.

*Peter A. Donahoe (Anthony & Waddoups* of counsel) for plaintiff *Brian Casey.*

*Helen B. Ryan (Ryan & Ryan* of counsel) for plaintiff *Charles M. Campbell.*

*Richard P. Schulze, Jr., (Moore, Torkildson & Schulze* of counsel) for defendant City Council of Honolulu.