[Civ. No. 12627. Third Dist. Feb. 1, 1972.]

LUCIAN B. VANDEGRIFT, Plaintiff and Respondent, v.
BOARD OF SUPERVISORS OF BUTTE COUNTY et al.,
Defendants and Appellants.

## COUNSEL

Blade & Farmer, Blade, Farmer & LeClerc, Robert Blade and Raoul J. LeClerc for Defendants and Appellants.

Wilke, Fleury, Sapunor & Hoffelt and William A. Gould, Jr., for Plaintiff and Respondent.

## OPINION

JANES, J.—The board of supervisors, auditor, and treasurer of Butte County appeal from a superior court judgment which ordered issuance of a peremptory writ of mandate commanding appellants to take all necessary steps to cause petitioner—a former district attorney of Butte County—to be paid, with interest, the sum of $5,247.21. That sum is the difference between (1) the total salary paid to petitioner as district attorney under the 1963 amendment of Government Code section 28126[1] for the period Sep-

[1]At all times relevant herein, Butte County was a county of the 26th class. (Cal. Const., former art. XI, § 5; Gov. Code, §§ 28020, 28047.) Effective September 20, 1963, Government Code section 28126 provided that, in a county of the 26th class, the salary of the district attorney was $13,200 a year. (Stats. 1963, ch. 30, pp. 639-640.)

tember 17, 1965, to January 3, 1967 (on which latter date he commenced a new term of office), and (2) the larger total salary which he would have been paid during that period if appellants had applied the amendment of section 28126 which became effective on September 17, 1965.

Effective September 17, 1965, section 28126 fixed the salaries of district attorneys in counties of the 26th class at $17,250 a year. (Stats. 1965, ch. 782, p. 2367.) The latter salary prevailed until November 13, 1968. (Stats. 1968, ch. 801, p. 1546.) Petitioner was elected district attorney in November 1962; in January 1963 he commenced serving a four-year term; on January 3, 1967, having been reelected, he commenced a new term of office; and he received compensation at the rate of $17,250 per year commencing January 3, 1967, until his resignation which became effective on or about May 21, 1968. The question in dispute, therefore, is whether petitioner's annual salary should have been increased to $17,250 effective September 17, 1965, instead of at the start of his subsequent term commencing January 3, 1967.

There is no dispute as to the facts, hence there was no evidentiary hearing in the trial court. The matter was submitted for decision upon the court's record and files and the briefs of counsel.

As amended in 1933, former article XI, section 5, of the California Constitution provided in relevant part that "The compensation of any county . . . officer shall not be increased after his election or during his term of office. . . ." On November 7, 1944, an amendment of section 5 was adopted which, in relevant part, provided as follows: "The Legislature by a two-thirds vote of the members of each house may suspend the provision hereof prohibiting the increase of compensation of any county . . . officer after his election or during his term of office for any period during which the United States is *engaged in war* and for one year after the termination of hostilities therein as proclaimed by the President of the United States." (Italics added.)[2] The quoted provisions of section 5 were in effect until their repeal in 1970.

In 1951, by a two-thirds vote as specified in section 5, the Legislature

---

[2]In the fall of 1944, while World War II was at its peak, there was officially circulated to the voters along with the sample ballot a printed argument in favor of the proposed amendment of section 5. There were no printed arguments against the measure. The circulated argument urged the voters to adopt the amendment at the forthcoming November election for the following reasons, apart from others not here relevant: "Senate Constitutional Amendment No. 1, appearing on the general election ballot as Proposition No. 10, provides that the State Legislature may, for the *duration of war* and one year thereafter, by two-thirds vote suspend that portion of Section 5, Article XI, of the State Constitution, which now prohibits the increase of compensation for any county . . . officer during his term of office. [Par.] The need for this amendment *at the present time* is great . . . . [Par.] With *wartime*

enacted former sections 53070 and 53071 of the Government Code. Comprising article 4.5 of that code, those two sections were amended in 1955, and, until their repeal in 1970 (Stats. 1970, ch. 1513, p. 3014), the amended sections provided in relevant part as follows:

*Section 53070:* "For the purpose of this article 'war' shall mean that period of time commencing:

"(a) When Congress declares war; or

"(b) *When the armed forces of the United States are engaged in active military operations against any foreign power whether or not war has been formally declared;* or

"(c) When the United States assists the United Nations, in actions involving the use of United States armed forces, to restore international peace;

and ending one year after the termination of hostilities therein as proclaimed by the President of the United States." (Italics added.)

*Section 53071:* "Any provisions . . . of the Constitution which prohibit the increase of compensation of any county . . . officer after his election or during his term of office *are hereby suspended during time of war as provided in Section 5 of Article XI of the Constitution.*" (Italics added.)[3]

---

*conditions,* many of the elective officers in the various counties find themselves working for much less than their deputies . . . . [Par.] Unless the people vote in favor of this amendment, it will be impossible to adjust salaries of county . . . officials *until 1947,* and in some cases, *until 1949.* . . . [Par.] This amendment allows an increase of salaries only if, in the judgment of proper authorities, an increase is justified. With legislative control, increases will not be given without justification, and *only in rare cases, where the suffering is extreme.* [Par.] . . . Nonelective officials are entitled to salary adjustments whenever necessary, and elective officials should be granted the same consideration, especially during *times like the present,* with the steady rise in the cost of living. [Par. omitted.] *This is only a wartime measure,* and should receive an overwhelming 'yes' vote, as it is only *in keeping with the many other adjustments we have been obliged to make* to keep abreast with the changing conditions, and *to further the war effort.* If adopted, this amendment will provide means whereby the Legislature, at its discretion and upon submission of proper evidence and investigation thereof, may bring about needed salary adjustments during *the war emergency.*" (Italics added.) (See also, *Holland* v. *Byram* (1946) 28 Cal.2d 567 [170 P.2d 937].)

[3] In respect to issues not here pertinent, sections 53070 and 53071 were before the court following the Korean War in *Rapp* v. *Gibson* (1959) 51 Cal.2d 467 [334 P.2d 575], and *McKesson* v. *Lowery* (1959) 51 Cal.2d 660 [335 P.2d 662]. An earlier enactment (Stats. 1945, ch. 5, p. 316) was passed as an urgency measure effective January 24, 1945, and suspended the prohibition against salary increases in section 5 of article XI "for the period commencing upon the effective date of this act and continuing until six months after hostilities terminate in each of the wars in which the United States is *now* engaged, whichever last terminate. . . ." (Italics added.) The 1945 measure was obviously applicable only to World War II. (See *Busch* v. *Turner* (1945) 26 Cal.2d 817 [161 P.2d 456, 171 A.L.R. 1063].)

Appellants neither concede nor present arguments against the proposition that the United States was *in fact* engaged in war on September 17, 1965, and continuously thereafter during the period for which petitioner seeks application of the Government Code salary amendment (§ 28126) which became operative on that September date. Without a doubt, the United States was actually engaged in war in Vietnam at all such times. (See, Evid. Code, § 451, subd. (f); Gulf of Tonkin Joint Resolution (Aug. 10, 1964), Pub. L. No. 88-408, 78 Stat. 384, 1 U.S. Code Cong. & Admin. News (1964) 441; Exec. Order No. 11216 (Apr. 24, 1965), 30 Fed. Reg. 5817, 2 U.S. Code Cong. & Admin. News (1965) 4381; 47 Ops.Cal.Atty. Gen. 156; Stats. 1965, res. ch. 73, pp. 5119-5120.) Moreover, the provision in former section 53070 of the Government Code including within the definition of war "active military operations against any foreign power" clearly brought United States involvement in Vietnam within the suspension provision of former section 53071 of that code, if those sections were constitutionally effective.

Apart from the actuality of the war in Vietnam, however, appellants contend that there are two reasons why, during those hostilities, former section 53071 of the Government Code was ineffective to suspend the prohibition against salary increases in former section 5 of article XI of the state Constitution.

■ *First,* appellants argue that only a war *formally declared* by the Congress was sufficient under the 1944 amendment of section 5.

■ *Second,* appellants contend that the 1944 amendment of section 5 was not intended to confer on the Legislature the authority to enact a self-executing measure like section 53071, which purported to automatically suspend the constitutional prohibition against salary increases upon the occurrence of *future* wars. "Stated otherwise," say appellants, "the words 'may suspend' provided by the 1944 amendment was [*sic*] understood by the people, and could only be understood by them to mean that the legislature would receive evidence and would independently and *on each occasion (i.e., each war)* exercise discretion, i.e., judgment as to whether a suspension should or should not be effectuated." (Italics supplied.)

Neither contention has merit.

■ As to appellants' first argument: The 1944 amendment of article XI, section 5, did not speak of a formal declaration of war. It merely said "engaged in war." ■ " 'Courts are no more at liberty to add provisions to what is declared [in the Constitution] in definite language, than they are to disregard existing express provisions [of the Constitution].' [Citations.]" (*Ross* v. *City of Long Beach* (1944) 24 Cal.2d 258, 260

[148 P.2d 649].) (Original inserts.) ■ "It must be held that the voters judged of the amendment they were adopting [Cal. Const., former art. XIII, § 1¼] by the meaning apparent on its face according to the general use of the words employed. Such is the rule where it does not appear that the words were used in a technical sense. [Citation.]. . . . The words used in a constitution 'must be taken in the ordinary and common acceptation, because they are presumed to have been so understood by the framers and by the people who adopted it.' [Citations.]" (*Kaiser* v. *Hopkins* (1936) 6 Cal.2d 537, 538-539 [58 P.2d 1278].)

■ Even if the words "engaged in war" be deemed ambiguous, leaving us free to consult the printed argument the voters received in favor of the proposed amendment (fn. 2, *supra*) (*Helping Hand Home* v. *San Diego* (1938) 26 Cal.App.2d 452, 457 [79 P.2d 778]), the printed argument did not address itself to a *declaration* of war. It spoke of the *fact* of war, and of salary hardships resulting therefrom. ■ Moreover, assuming such ambiguity, "When a constitutional provision is susceptible of more than one reasonable interpretation, an interpretation placed upon it by the Legislature is of persuasive significance [citations]." (*Miro* v. *Superior Court* (1970) 5 Cal.App.3d 87, 99 [84 Cal.Rptr. 874]). If the legislative construction of a constitutional amendment is reasonable, "the courts will ordinarily follow the legislative construction." (*Kaiser* v. *Hopkins, supra,* 6 Cal.2d at p. 540.) ■ The construction which former Government Code section 53070 placed on the word "war" was, in all respects, reasonable and entirely compatible with the common sense interpretation which must be given to the same word in the 1944 constitutional amendment.

■ As to appellants' second argument: The 1944 amendment of section 5 contained no language indicating that legislative action suspending the prohibition against salary increases had to be undertaken on a war-by-war basis. On the contrary, the provisions of the amendment were clear; it granted the Legislature authority to suspend the constitutional prohibition "for *any period* during which the United States is engaged in war. . . ." (Italics added.)[4] It is without avail for appellants to argue, as they do, that in the enactment of sections 53070 and 53071 the 1951 Legislature

---

[4]In this connection, however, we note the manifestly misleading nature of the argument distributed with the ballot pamphlet. (See fn. 2, *supra*.) Reasonably construed, that argument indicated to the voters that the sole purpose of the proposed constitutional amendment was to enable the prohibition against salary increases to be suspended *only during World War II*. Amended section 5 did not reflect such a construction, however, nor do appellants urge it. As previously stated, appellants take the position that the Legislature *could* make the suspension apply to wars subsequent to World War II, so long as the Legislature dealt with each such war while it was in progress.

"unconstitutionally attempted to prevent its successors from exercising the power and discretion vested by the Constitution in them." Nothing in those two sections purported to prevent their repeal by a future legislature.

In support of their second argument, appellants rely heavily upon *Brooks* v. *Fischer* (1889) 79 Cal. 173 [21 P. 652]. The *Brooks* case has no relevance whatever. It simply held that, under the then applicable provision of the state Constitution,[5] ratification by both houses of the Legislature would suffice to make a city charter operative, and that a joint resolution of those houses, without gubernatorial approval, was adequate for that purpose. *Brooks* did not involve the question whether a constitutional provision authorized a statute to be enacted which would apply to future events without further legislative action as each such event occurred.

The judgment is affirmed.

Friedman, Acting P. J., and Taylor, J.,* concurred.

A petition for a rehearing was denied February 28, 1972, and appellants' petition for a hearing by the Supreme Court was denied March 30, 1972.

---

[5]California Constitution, former article XI, section 8.
*Assigned by the Chairman of the Judicial Council.