HAWAII GOVERNMENT EMPLOYEES' ASSOCIATION, American Federation of State, County and Municipal Employees, Local 152, AFL-CIO; et al., Plaintiffs-Appellants, *v.* COUNTY OF MAUI; and ELMER F. CRAVALHO, Mayor, County of Maui, Defendants-Appellees

NO. 6524

MARCH 22, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

66

OPINION OF THE COURT BY OGATA, J.

On February 18, 1977, a decision and final order was entered by the circuit court of the second circuit which upheld the validity of the revised Maui County charter provisions and denied the injunction prayed for by the plaintiffs-appellants (hereinafter appellants), Hawaii Government Employees' Association, American Federation of State, County and Municipal Employees, Local 152, AFL-CIO; Leona C. Cravalho; Alvin M. Cortez; Charldine J. Apo; James M. Izumi; Misao Kubota, Reynante Tagorda, Robert K. Ohigashi, King Palmer, and James M. Watari, members of the Civil Service Commission, County of Maui; Donald Rickard, Joe Y. Kawamura, Toku Arakaki, Hattie Lopes, Edward Haole, David Nobriga, and Henry K. Koja, members of the Board of Water Supply, County of Maui; Hideo Niibu, Frank Gouveia, Pepito Ragasa, Hannibal Tavares, Wallette Pellegrino, and George Tamura, members of the Police Commission, County of Maui; Joseph Souza, and John Arisumi, Richard Caldito, Sr., Pauline Castanera, and Tokumi Tokuhisa, members of the Liquor Control Commission, County of Maui. Appellants now appeal to us from those adverse portions of the decision and final order.[1] The defendants-appellees (hereinafter appellees) are the County of Maui and its duly elected, qualified and acting mayor, Elmer F. Cravalho.

We affirm the decision and final order except we reverse that part which relates to HRS chapter 76, part III.

---

[1] On March 14, 1977, the court below entered an order to extend the terms of a temporary restraining order first issued on December 29, 1976, enjoining defendants-appellants from implementing the challenged provisions of the Maui County charter which were revised, pending this appeal.

In 1967, the people of the County of Maui first adopted a charter which provided for their own local self-government. This charter by its own terms became effective on January 2, 1969. Prior to that date the government of the County of Maui was entirely statutory in origin. *See generally* HRS chapters 46, 52, 54, 61, 62 and 66. Thereafter, the charter commission of the County of Maui amended the charter in several respects, and at the general election held on November 2, 1976, the Maui charter provisions, including the revisions, were ratified. The charter as so revised took effect on January 1, 1977, except those revised provisions of the charter which the circuit court temporarily restrained from implementation. In this opinion we shall refer to the Maui Charter as amended as the revised charter.

Except for paragraph 14 of section 13-2, and section 13-3, all of the challenged provisions of the revised charter are contained in article 8 of the revised charter and all pertain to the several departments of the County of Maui.

Appellants contend the provisions of the revised charter set forth in chapters 2 and 3 of article 8 which authorize the corporation counsel and the public prosecutor to appoint deputies and necessary staff who "shall be in the exempt class of civil service and shall serve at the pleasure of" such corporation counsel and public prosecutor are in conflict with HRS § 76-77, and, therefore, invalid.

Appellants further contend that the revised charter provisions of section 8-9.3 which vest in the Mayor rather than in the Maui County Civil Service Commission, as was the case in the past, the power to appoint and remove the county director of personnel services and which further require the director to perform such duties as may be assigned by the mayor, rather than the commission, in addition to the duties as are established under the civil service laws of the State are in conflict with HRS § 76-75, and, therefore, invalid.

Appellants further contend that the first paragraph of section 8-11.3 of the revised charter which substitutes the county planning director for the district engineer of the State department of transportation as an ex-officio, non-voting

member of the board of water supply, is in conflict with HRS § 54-12, and, therefore, invalid.

Appellants further contend that the remainder of section 8-11.3, and sections 8-11.4 and 13-3 of the revised charter which reduce and curtail all of the autonomous powers and authority of the board of water supply to manage and operate the Maui water works, granted to the board by HRS chapter 54, are in conflict with statutory provisions of HRS chapter 54 and, therefore, invalid.

Appellants further contend that the power of the police commission to remove the chief of police has been modified by section 8-12.3 of the revised charter; that such charter provisions which would require the commission to give to the chief of police information in writing of the charges leading to his dismissal and a hearing before the commission to effect his dismissal are in conflict with HRS § 52-34, and, therefore, invalid.

Appellants further contend that some of these charter provisions which were in effect when the Maui Charter was amended on November 2, 1976, continued in effect under the revised charter, which appellants contend to be invalid for being in conflict with the laws of the State. These charter provisions are as follows:

1. Section 8-9.3 of the revised charter provides that the director of the department of personnel services "shall have had a minimum of five years of training and experience in personnel administration, either in public service or private business, or both, at least three of which shall have been in a responsible administrative capacity." This section conflicts with HRS § 76-75, which provides that the personnel director of each county "shall, at the time of his appointment, and thereafter, be thoroughly familiar with the principles and methods of personnel administration and shall believe in applying merit principles and scientific administrative methods to public personnel administration."

2. Section 8-9.4 of the revised charter, which pertains to positions under civil service, as it applies to the administrative head of the department of water supply and his first deputy is in conflict with HRS § 54-14, since HRS § 54-14

provides that the manager and chief engineer of each county board of water supply, who serves as administrative officer of the board, shall be subject to HRS chapter 77, and his deputy manager-engineer shall be subject to HRS chapters 76 and 77. Appellants also contend that this section of the revised charter in its application to the administrative head of the department of liquor control and his first deputy is in conflict with HRS § 281-17 (Supp. 1975).

3. Section 8-11.3 of the revised charter structures a board of water supply of seven members appointed by the mayor of the County of Maui with the approval of the Maui Council, plus two non-voting ex-officio members. It further provides that one of such non-voting ex-officio members shall be the director of public works and the other shall be the planning director of the County of Maui. This section, therefore, conflicts with HRS § 54-12, which provides that there shall be seven voting members, five of whom shall be appointed by the mayor with the approval of the Maui Council, one of whom shall be the chief engineer of the county and one of whom shall be the state district engineer of the state department of transportation.

4. Section 8-11.4 of the revised charter sets forth a minimum qualification for appointment as director of the department of water supply which differs from HRS § 54-14. Under the charter's requirement, before one can qualify as a director of the department of water supply, he must have had five years training and experience in a responsible administrative capacity, either in public service or private business, or both. In contrast HRS § 54-14, requires that the director shall be an engineer duly registered under HRS chapter 464. Therefore, the charter section, to this extent, conflicts with HRS § 54-14.

5. Section 8-12.2 of the revised charter provides for a police commission of seven members, with no restriction as to who may serve on the commission. This section is in conflict with HRS § 52-1, which restricts the police commission in each county to five members, no more than three of whom shall belong to the same political party at the time of appointment.

6. Section 8-13.3 of the revised charter provides that "The liquor control adjudication board shall hear and determine all complaints regarding violations of the liquor control laws of the State, or complaints regarding violations of rules and regulations established by the liquor control commission," and the liquor control adjudication board is authorized to "impose such fines or punishment as may be provided by law upon the conviction thereof." It is claimed by appellants that this section is in conflict with HRS § 281-17 (Supp. 1975), which places this function in the liquor control commission.

7. Section 8-13.4 of the revised charter provides that the director of the department of liquor control shall have had a minimum qualification of five years of training and experience in law enforcement, at least three of which shall have been in a responsible administrative capacity. HRS § 281-17 (Supp. 1975) does not expressly require any minimum qualification for the appointment of director of the department of liquor control. Therefore, this section conflicts with HRS § 281-17 (Supp. 1975).

8. The provisions of sections 8-13.4 and 13-2.14 of the revised charter prohibit the liquor control commission or any of its members from investigating complaints regarding violations of State liquor control laws or the commission's rules and regulations and reporting such violations to the prosecuting officer of the county. To this extent these provisions, therefore, conflict with HRS § 281-17 (Supp. 1975), which authorizes the liquor control commission and each member thereof to investigate such violations and to report the violations to the prosecuting officer. Appellants contend that the conflict between these charter provisions and HRS § 281-17 (Supp. 1975) renders the charter provisions invalid.

The contention of the appellants is that each of these revised charter provisions specifically mentioned above is invalid under article VII of the State Constitution and HRS § 50-15. Appellants argue that the State Constitution does not provide for true home rule charters for political subdivisions of the State; that our State Constitution grants to political subdivisions only such powers as are delegated to them by the legislature by general laws; that there are only three limited

exceptions to this legislative control over local affairs, and that one of such exceptions is the political subdivision's right to form its executive, legislative and administrative structure and organization without legislative interference.[2] They further argue that these challenged charter amendments and provisions are not concerned with executive, legislative and administrative structure and organization as these terms are used in section 2, article VII of the State Constitution, and that all of these mentioned amendments and provisions of the revised charter are in direct conflict with state statutes on civil service, waterworks, police and liquor control, and are thus invalid.

I.

Prior to the commencement of this action, the entire provisions of, including the revisions to, the revised charter were submitted to and ratified by the people of Maui County at the general election held on November 2, 1976. The validity and enforceability of these provisions including the revisions, are herein tested against the applicable provisions of article VII of the State Constitution and HRS § 50-15.

Article VII, section 5 of our State Constitution provides that "This article shall not limit the power of the legislature to enact laws of state-wide concern." HRS § 50-15 reads:

> § 50-15 *Reserved powers*. Notwithstanding the provisions of this chapter, there is expressly reserved to the state legislature the power to enact all laws of general application throughout the State on matters of concern and interest and laws relating to the fiscal powers of the counties, and neither a charter nor ordinances adopted under a charter shall be in conflict therewith.

---

[2] Appellants state that two other exceptions are: (1) The charter drafted by a political subdivision need not be submitted to a legislative body for approval; and (2) the explicit prohibition found in article VII, section 4 that no law shall be passed mandating any political subdivision to pay any previously accrued claim.

Our State Constitution became effective upon Hawaii's admission into the Union on August 29, 1959. It was amended once in 1968. Prior to its amendment, article VII, the local government article, provided in section 2 thereof: "Each political subdivision shall have power to frame and adopt a charter for its own self-government within such limits and under such procedures as may be prescribed by law."

We stated in *Fasi v. City and County*, 50 Haw. 277, 283-84, 439 P.2d 206, 210 (1968):

It is clear from the language of article VII, section 2, and the foregoing account of its formulation in the convention, that a charter contemplated in the constitution is no more than a statutory charter. The constitution merely empowers each political subdivision to frame and adopt a charter "within such limits and under such procedures as may be prescribed by law," thus leaving the scope of local self-government to legislative control. There is, however, one constitutional limitation in the exercise of this control. That limitation is contained in article VII, section 1 which provides: "Each political subdivision shall have and exercise such powers as shall be conferred under general laws." Subject to this provision, the legislature is free to enact any legislation affecting the powers of political subdivisions. There is nothing in the constitution which says that the legislature may not amend a charter provision after a political subdivision has once adopted a charter.

However, we rendered the *Fasi* opinion on March 25, 1968, before the convening on July 15, 1968 of the Constitutional Convention of 1968. The Constitutional Convention of 1968 recommended to the people of this State that section 2 of article VII be amended to read as follows:

LOCAL SELF-GOVERNMENT: CHARTER

Section 2. Each political subdivision shall have power to frame and adopt a charter for its own self-government within such limits and under such procedures as may be prescribed by general law. The prescribed procedures,

however, shall not require the approval of a charter by a legislative body.

Charter provisions with respect to a political subdivision's executive, legislative and administrative structure and organization shall be superior to statutory provisions, subject to the authority of the legislature to enact general laws allocating and reallocating powers and functions.

A law may qualify as a general law even though it is inapplicable to one or more counties by reason of the provisions of this section.

The Constitutional Convention of 1968 further recommended that the effective date of article VII, section 2, as amended, should not be upon its ratification, but should be postponed for a period of three full years after its ratification. In accordance with the recommendation of the Convention the amendments to article VII, section 2 of the State Constitution and the provisions to delay the effective date of these amendments as contained in article XVI, section 9, were ratified by the people in the general election held on November 2, 1968. Thus, the amended article VII, section 2 became effective on January 1, 1972. *Chikasuye v. Lota,* 51 Haw. 443, 462 P.2d 192 (1969).

The Committee on Local Government had proposed the adoption of the amended version of article VII, section 2 after it conducted public hearings and deliberated upon numerous proposals submitted to it. In its Standing Committee Report No. 53 (majority), the Committee stated:

The principal change in this section is the protection of certain charter provisions against amendment or repeal by the legislature.

In *Fasi, et al., v. City and County of Honolulu, et al.,* 50 H. 277, the Supreme Court held that a charter, even if adopted under the Constitution as provided by Article VII, Section 2, is no more than a statutory charter which is subject to continuing legislative control. This proposal will give a county charter a higher status within a pre-

scribed area. The designated provisions will become of superior authority to a statute.

In prescribing the area within which a charter shall be of superior authority to a statute the proposal is similar to the model provision recommended by The American Municipal Association. This model provision was adopted by South Dakota in 1962. It was the basis of Proposal No. 241, introduced at the request of the Hawaii State Association of Counties.

Your Committee omitted from the draft presented by Proposal 241 the words "personnel" and "procedure." The word "personnel" was omitted because your Committee was convinced that the legislature should not be deprived of the power to enact, and maintain in effect, laws such as Act 188, S.L.H. 1961. Under the committee proposal, no charter provision could supersede Act 188, S.L.H. 1961, unless the legislature so provided. Moreover, any delegation by the legislature of power as to personnel matters will not be irrevocable.

The word "procedure" was omitted in order to preserve the authority of statutes such as the Administrative Procedure Act.

As presented by your Committee, therefore, the area which the proposal places beyond legislative control is limited to charter provisions as to the executive, legislative and administrative structure and organization of the political subdivision. For example, the legislature could not change the composition of the legislative body of a county. However, the proposal specifically preserves the authority of the legislature to enact general laws allocating and reallocating powers and functions. This means that the legislature could transfer a function from the county to the state level even if the result would be to eliminate a department of the county government provided for in its charter.

Vol. I *Proceedings of the Constitutional Convention of Hawaii* of 1968, 229.

It is beyond question that the 1968 Constitutional Convention delegates intended that county charters acquire a stature

which would resist legislative interference in certain areas. Not only does the above-quoted committee report by the Committee on Local Government but, additionally, the debates in the Convention's Committee of the Whole clearly indicate that the thrust of the constitutional amendment was to give the charter certain basic stability against legislative encroachment. In response to a question by Delegate Goemans, Delegate Ushijima, the chairman of the Committee on Local Government, responded, "Well, I don't know what your definition of sovereignty is. What we are doing here is to give certain basic rights, constitutional rights to the charters, to the various counties insofar as the enactment of their charter is concerned." Vol. II *Proceedings of the Constitutional Convention of Hawaii of 1968*, 424. We are compelled to recognize that our decision in *Fasi, supra,* has been eroded to the extent that it conflicts with article VII, section 2 of the State Constitution as it was amended and ratified in 1968.

Even the appellants admit that charter provisions which now relate to a political subdivision's executive, legislative and administrative structure and organization are entitled to a status superior to a statute. Thus, all the provisions of Maui's charter which were in effect on January 1, 1972 concerning the structure and organization of executive, legislative and administrative matters in Maui County government took a different complexion under the provisions of article VII, section 2. Similarly, those revised charter provisions which were ratified at the 1976 election relating to governmental structure and organization of the county are also protected from legislative tampering.

We are aware that "[t]he general rule is that, if the words used in a constitutional provision . . . are clear and unambiguous, they are to be construed as they are written." *Spears v. Honda,* 51 Haw. 1, 6, 449 P.2d 130, 134, *reh. denied,* 51 Haw. 103 (1968). Therefore, in construing the term structure and organization as used in the context of article VII, section 2

we adhere to the well established rule that "[i]n the construction of a constitutional provision . . . the words of the constitution are presumed to be used in their natural

sense . . . 'unless the context furnishes some ground to control, qualify or enlarge [them].' "

*State v. Anderson*, 56 Haw. 566, 577, 545 P.2d 1175, 1182 (1976). These words were explained in *La Fleur v. City of Baton Rouge*, 124 So.2d 374, 378 (La.App. 1960), as meaning "supervision, control and internal arrangement of the component parts of the mechanism or instrumentality through which the power (ability) conferred is exercised in obedience to the function (duty) imposed." It was further held in that case at 378, that power means "ability or capacity . . . synonymous with inherent or basic authority to indulge in a particular undertaking or provide or perform a certain service," and function means "duty in the sense that it is complementary of the power (ability) conferred and, as such, is taken to mean onus or obligation to execute the power granted." *La Fleur* concluded that the Louisiana statute fixing the salaries to be paid to firemen did not apply to firemen of the fire department of the City of Baton Rouge, holding that "the question of pay of a fireman being a matter of structure and organization and distinguished from a power or function is reserved exclusively to [City of Baton Rouge] . . . ." 124 So.2d at 379. The foregoing definition of structure and organization was approved by the Louisiana Supreme Court in *Letellier v. Jefferson Parish*, 254 La. 1067, 229 So.2d 101 (1969).[3] We think that such an interpretation is compatible with the natural sense of these words.

## II.

The Second State Legislature passed Act 73 in 1963, which provided for the framing and adopting of charters by the counties. Act 73 has been amended by Act 65, S.L.H.

---

[3] These two cases were concerned with the application of the term structure and organization as used in the Louisiana Constitution to the salaries of and pension system for firemen of the local governments. In the present case under Standing Committee Report No. 53, *see supra* at 10, personnel was deleted from the constitutional proposal so that civil service and compensation would not be included within the area of structure and organization.

1965, and by Act 235, S.L.H. 1967, and as so amended presently comprises HRS chapter 50, constituting the enabling statutory law on charter commissions.

HRS chapter 50 is a general law which authorizes the mayor of each county to appoint a charter commission of eleven members with the approval of the legislative body of the county. It further authorizes the charter commission after the appointment of its members to organize, hold its first meeting and to adopt such rules and regulations for the conduct of its business as it may deem necessary and desirable.

The statutory provisions prescribing the charter commissions' duties añd functions are set forth in HRS § 50-6, which has not been amended since 1963. It provides that:

> The charter commission shall study and analyze the existing governmental structure of the county for the purpose of securing information that will enable it to draft a proposed charter adapted to the requirements of the county and designed to provide for the people of the county, a more efficient and responsible form of government. The study of any subject relevant to the government, property, or other affairs of the county, or of the laws relative thereto, or of any matter or thing deemed by the commission to be pertinent thereto, and consistent with the purpose for which the commission was created, shall be deemed within the scope of the commission's work. If, after its study, the commission decides that a charter is not desirable, it shall so report to the legislative body of the county and by resolution of the legislative body of the county the commission shall be dissolved. If, however, the commission decides to draft a charter, the charter shall set forth the structure of the county government, the manner in which it is to operate, the powers of the county in local affairs, and shall provide for orderly transition from the present government to government under the charter.

The last paragraph of HRS § 50-10 provides, "Upon adoption, the charter shall become the organic law of the county and shall supersede any existing charter and all laws affecting the organization and government of the county which are in

conflict therewith." This language was contained in section 11 of Act 73, S.L.H. 1963, the original enabling act.

It is clear to us that under HRS chapter 50, a charter commission is given broad powers necessary to formulate a charter for a county. In drafting such a charter the commission is required to delineate the structure of the county government. In so acting it must necessarily enumerate the powers and functions of each county department, board, commission and agency in local affairs within such relevant limits prescribed by HRS § 50-6. Upon the adoption of the charter, it shall become the organic law of the county superseding any existing charter and all laws affecting the organization and government of the county which are in conflict therewith. Of course, under HRS § 50-15 the legislature has expressly reserved the power to enact all laws of general application throughout the State on matters of concern and interest[4] and laws relating to the fiscal powers of the counties, consistent with article VII, sections 3 and 5 of the State Constitution.

### III.

The appellants contend that the county can exercise only those powers delegated to it by the state legislature, and because the revised charter provisions conflict with preemptive statutes, the charter provisions are invalid. Appellants cite for support *In re Anamizu*, 52 Haw. 550, 481 P.2d 116 (1971). Therein we said that counties may exercise only those powers delegated to them by general laws; where the legislature clearly intended to preempt the field of regulation, ordinances attempting to regulate the same subject matter are invalid. Herein we hold that the legislature duly delegated the administration of police, waterworks and liquor control matters, as hereinafter set forth, to the counties, thus satisfying

---

[4] The phrase "on matters of concern and interest" is the statutory language taken from HRS § 50-15. We agree with appellants that this phrase should be interpreted to mean on matters of statewide concern and interest.

the *Anamizu* requirements. Further the rationale of *Anamizu* does not apply to the instant case because the legislature foresaw that a charter commission could draft a charter which would contain provisions conflicting with existing laws. It was just for such a contingency that the last paragraph of HRS § 50-10 was designed so that the conflicting statute would not invalidate any charter provisions which related to organization and government of the county. The legislature did not intend to nullify these charter provisions "affecting the organization or governmental structure" of political subdivisions because of their conflict with existing statutes. *See Salavea v. City and County,* 55 Haw. 216, 219, 517 P.2d 51, 54 (1973); *see generally Bloom v. City of Worcester,* 363 Mass. 136, 293 N.E.2d 268 (1973). This court so stated in *Castle v. Secretary of the Territory,* 16 Haw. 769, 777-778 (1905):

> We have only to decide whether any of its vital features are so inconsistent with the Organic Act as to require the inference that it is not authorized thereby. It is to be observed that the organization of counties with their proper officers for attending to their own affairs necessarily is inconsistent with all those laws of Hawaii relating to such portions of the duties of Territorial officers as properly are included in the duties and functions of county officers. No County Act can be regarded as unauthorized by the Organic Act by reason of such inconsistency.

The appellants also cite *Kunimoto v. Kawakami,* 56 Haw. 582, 545 P.2d 684 (1976), for the proposition contained therein that on functions of statewide interest and concern the political subdivisions may not thwart the state's performance of its duties. However, the prohibition applies "if the counties are not given specific authority to take over the function," 56 Haw. at 585, 545 P.2d at 686, which is clearly not the case here.

### IV.

We must recognize that the fundamental principle in construing a constitutional provision is to give effect to the inten-

tion of the framers and the people adopting it. *Whitman v. National Bank of Oxford,* 176 U.S. 559 (1900); *State ex rel. Dade County v. Dickinson,* 230 So.2d 130 (Fla. 1969); *Wall v. Harrison,* 201 Kan. 598, 443 P.2d 266 (1968). It has been stated that in construing a particular constitutional provision, the object sought to be accomplished and the evils sought to be remedied should be kept in mind by the courts. *State ex rel. Dade County v. Dickinson, supra.* With these views in mind, we have reviewed each of the challenged provisions of Maui County's revised charter.

Section 8-11.1 of the revised charter provides for a department of water supply to consist of a board of water supply, a director of the department of water supply and the necessary staff. Section 8-11.3 provides for the composition and membership of the board of water supply and the powers of such board, all of which substantially differ from those provided by HRS chapter 54. The board under the revised charter is not an autonomous agency and the waterworks thereunder is in fact to be managed by the mayor and council. Under section 8-11.4, the power of appointing and removing the director of the department of water supply would be placed in the mayor rather than as previously in the board. The revised charter creates under section 8-13.3 a liquor control adjudication board[5] which is given the exclusive power to hear and decide all complaints regarding violations of the liquor laws as well as rules and regulations established by the liquor control commission.[6] The adjudication board is also given the power to punish offenders as provided by law. The appellants allege that these provisions shift the power

---

[5] Such a board of three members was initially created under the charter which took effect January 2, 1969. The revised charter increased its membership to five members.

[6] Appellants' contention that revised charter sections 8-13.4 and 13-2.14 prohibit the liquor control commission and its members from investigating complaints regarding violations of state liquor laws and the commission's rules and regulations is erroneous. Revised charter section 13-2.14 provides an exception where interference with the administrative affairs of the department is otherwise provided for by law. HRS § 281-17(9) (Supp. 1975) is the law providing investigatory powers to the liquor control commission or its members.

from one board to another board or to the mayor and council and violate the rule of law that a power delegated by the legislature to a specific body or position within the political subdivision may not be removed to another body or position. *State ex rel. Gutherie v. City of Richland,* 80 Wash.2d 382, 494 P.2d 990 (1972); *Logan v. Two Rivers,* 222 Wis. 89, 267 N.W. 36 (1936). However, these cases do not apply to the instant situation. Both amendment 40 to article XI, section 10 of the Washington State Constitution and article II, section 3 of the Wisconsin State Constitution, the constitutional provisions on municipalities relevant to *Gutherie* and *Logan,* respectively, do not contain municipal structure and organization superiority clauses. Such a provision as contained in article VII, section 2 of our State Constitution allows a county in this state through its charter to redelegate to another appropriate local officer or body a power originally delegated by the legislature to another body. 2 *McQuillan on Municipal Corporations,* 3d ed., 618, section 9.03.

One of the duties and functions of the County of Maui upon its creation in 1905 was to acquire, establish and maintain a public water system and to furnish domestic water to its inhabitants. *See* Act 39, S.L.H. 1905. Maui County operated such a water system until 1949, when the structure and organization of that unit was modified by the legislature which created for the county under Act 289, S.L.H. 1949, an autonomous board of water supply. We would treat and regard such an agency as performing a local function as distinguished from state function. In 1955, the legislature repealed Act 289, S.L.H. 1949, and abolished the autonomous county board of water supply. *See* Act 201, S.L.H. 1955. Six years later in 1961, the legislature enacted Act 155, S.L.H. 1961, which has been codified as HRS chapter 54. This chapter restored to Maui county an autonomous board of water supply. It is our opinion that a county charter commission is empowered to study the waterworks of a county as a department of the county government. A provision was contained in the bill (H.B. 18) which became Act 73, S.L.H. 1963, that would have prevented the charter commission from considering and recommending the establishment of autonomous

agencies, such as the Maui board of water supply. However, such a provision was deleted in the Senate. *See Hawaii Senate Journal* 1963, 2d Leg. Gen. Sess. S.C.Rep. 67 at 704. There is nothing in the enabling act which prevents the charter commissions from studying and analyzing such a local function and to recommend for adoption a department of water supply designed to meet the needs of the locality.

Further, we agree with the legislature that the regulation of the manufacture, importation and sale of intoxicating liquor within a county is a local concern. The Senate Committee on Judiciary stated with respect to S.B. No. 11, which became Act 172, S.L.H. 1963, relating to county liquor commission:

> Your Committee after due deliberation and consideration has come to the conclusion that control of the consumption of alcoholic beverages is a local rather than a state function. Therefore, since the administration of and the responsibility for the control of liquor functions should be with the various counties, the members of the commission should be appointed by and be responsive to the respective county executive officers.

*Hawaii Senate Journal* 1963, 2d Leg. Gen. Sess. S.C. Rep. 101 at 715.

Accordingly, we conclude that sections 8-11.3 and 8-11.4, as well as section 8-13.3, all relate to executive and administrative structure and organization of the county government and are superior to statutory provisions.

Likewise, we are of the opinion that police function is not a matter of statewide concern. In connection with the passage of Act 176, S.L.H. 1963 under which the legislature transferred to the counties the power of appointment of the police commission members, the Senate Committee on Judiciary stated:

> The author of the Report [Public Administration Service] and almost all of the people who testified expressed the opinion that the functions carried out by the various police commissions were primarily and basically of local concern. On this basis, they recommended that the

power of appointment of members of the various police commissions be transferred from the state level to the county level in order that the commissioners would be more responsive to local demands.

*Hawaii Senate Journal* 1963, 2d Leg. Gen. Sess., S.C.Rep. 100 at 715. The publication by Public Administration Service entitled "State and Local Government Relationships in the State of Hawaii" stated at 82:

Police protection is a local governmental function. Local governments pass on the budgets and provide all financial support. Locally elected officials should have the responsibility for police administration. A charter amendment should be obtained to assign to the Mayor of Honolulu the authority to appoint the police chief with advice and consent of the Council. In the other counties, power to appoint police chiefs should be assigned to chief executive officers under the reorganized form of government discussed in the succeeding chapter.

It is clear to us from the above-quoted legislative report and the publication to which it referred that the power over police matters was delegated to the counties. The revised charter provision changing the number of members serving on the Maui police commission is a matter of executive and administrative structure and organization and is superior to conflicting statute.[7] Similarly, the revised charter section 8-12.3 which restricts the police commission's power to remove the chief of police is valid as against conflicting provisions in HRS § 52-34.

Moreover, we hold that the Maui charter provisions which require qualifications for the positions of directors of the departments of liquor control and water supply are superior to statute. The issue of who shall fill departmental head positions created by the charter commission is a matter of executive and administrative structure and organization, *see Del Duca v. Town Administrator of Methuen*, — Mass. —,

---

[7] Revised charter section 13-2.2 requires that "[n]ot more than a bare majority of the members of any board or commission shall belong to the same political party."

329 N.E.2d 748 (1974), which the State Constitution makes superior to statute. It is also apparent that such an appointee also serves at the pleasure of the appointing authority .

The language of HRS § 281-17 (Supp. 1975) provides that the secretary of the liquor commission and the other employees of that commission shall be members of the civil service and be subject to the compensation law. Since the charter provisions gave the liquor control unit of the government a structure with departmental standing, it is reasonable that the director of the department of liquor control be subject to certain minimum qualifications for his appointment, like every other department head of the county.

All of the challenged provisions of the revised charter relative to the departments of water supply, police and liquor control are found valid and enforceable. We hold that these provisions relate directly to the organization and government of the County of Maui, and, under HRS § 50-10, they supersede all laws of the State on the same subject in conflict therewith. Because the conflicting statutes are not of statewide concern or affect the fiscal powers of the county, the provisions of the revised charter are not invalid under article VII of the State Constitution and HRS § 50-15.

V.

However, the constitutional protection afforded county governments against legislative intrusion is far from total. The constitutional amendments made to article VII, on local government, did not grant to the political subdivisions complete home rule; such amendments, as appellants state, only gave the local governments limited freedom from legislative control.

Thus, we hold that these amendments do not enable a political subdivision to adopt provisions in its charter which are repugnant to existing or future laws in the areas of personnel and procedure which were stricken by the Committee on Local Government from the proposal finally adopted by the people. While the framers of the State Constitution did pro-

vide in article VII, section 2 that "[c]harter provisions with respect to a political subdivision's executive, legislative and administrative structure and organization shall be superior to statutory provisions, subject to the authority of the legislature to enact general laws allocating and reallocating powers and functions," they also provided in section 5 that "[t]his article shall not limit the power of the legislature to enact laws of state-wide concern." From an examination of the framers' Standing Committee Report No. 53 (majority), we think it is clear that they intended the final authority on all civil service and compensation matters to remain with the legislature. The committee report refers to "personnel" and "personnel matters," and these words and phrases should be given their literal and ordinarily accepted meaning unless the context indicates otherwise. *State v. Anderson, supra.* "The term 'personnel matters' is given no peculiar limited meaning." *State v. Hernandez,* 89 N.M. 698, 699, 556 P.2d 1174, 1175 (1976). In this sense the term refers to and embraces both HRS chapters 76 and 77 in their entirety.

That the framers considered such matters to be of state-wide concern and used the terms "personnel" and "personnel matters" in their broadest sense is further evidenced by the debates of the Committee of the Whole on Local Government:

DELEGATE USHIJIMA [Chairman of Standing Committee]: Well, Section 2 is the charter provision. We have by our action given certain areas constitutional right insofar as charter provisions are concerned, and that is in the field of executive, legislative, administrative structure and organization. *I think the committee report is very clear as to the reasons why we left out procedure and personnel. We have had lots of witnesses who testified that insofar as personnel matters are concerned, we should retain it on a statewide level and retain the philosophy of Act 188 which is presently in force.* [Vol. II, Proceedings of the Constitutional Convention of Hawaii of 1968, at 422.] (Emphasis added)

Act 188 to which the committee report and Delegate Ushijima referred, and given by the framers as an example of

personnel-oriented laws exempted from the operation of Section 2, is a statute of state-wide application on both the administrative and policy levels. The act defines the functions of the civil service commission with respect to the compensation law. It also provides for the creation of a State appeal board to hear appeals arising under the compensation law. The cost of its operations is borne by the State. Its membership is composed of one civil service commission member from each jurisdiction who is appointed by the governor to the appeal board. It seems to us obvious from these provisions that the statute necessarily contemplated the continued existence and functioning of the civil service commissions as provided by general law.

We need not discuss in depth the policy considerations underlying civil service and compensation laws. The merit system has become an established policy of government. This has been a policy of state-wide application. Uniformity in the administration of the law is essential to its success. How well the system works and whether its ultimate objectives are to be achieved depends in relevant part upon the manner in which the laws pertaining to it are administered. Accordingly, a civil service commission member by statute must be one "who believe[s] in applying merit principles to public employment." HRS § 76-72. The personnel director must be one who "believe[s] in applying merit principles and scientific administrative methods to public personnel administration." HRS § 76-75. There is no valid reason to suppose that the authors of article VII, sections 2 and 5, having expressed their conviction "that the legislature should not be deprived of the power to enact, and maintain in effect, laws such as Act 188," and having determined that "any delegation by the legislature of power as to personnel matters will not be irrevocable," have nevertheless seen fit to deprive the legislature of the authority to determine the administrative means by which its legislative objectives in these areas may best be achieved. All indications point to the contrary.

Accordingly, we find that there is a fatal conflict in the charter provisions in chapters 2 and 3 of the revised charter relative to the staff of the corporation counsel and the pro-

secuting attorney other than the deputy corporation counsels and the deputy prosecuting attorneys. Sections 8-2.4 and 8-3.2 of the revised charter provide that the staff other than these deputies shall be exempt from civil service. We find that these conflicts in chapters 2 and 3 of the revised charter with respect to the staff of the corporation counsel and the prosecuting attorney and any conflict in the provision of the first paragraph of section 8-9.4 of the revised charter with HRS § 76-77 would render the revised charter provisions nugatory. Any inconsistency between chapter 9, of article 8 of the revised charter and Part III of HRS chapter 76 would result in the latter prevailing. We have been sustained in this view when the legislature enacted in the last session H.B. No. 1353, which became Act 61, S.L.H. 1977, effective May 7, 1977. We take cognizance of the proposition that where legislative construction of a constitutional amendment is reasonable, the courts will ordinarily follow the legislative construction. *Vandegrift v. Board of Supervisors of County of Butte,* 23 Cal.App.3d 235, 100 Cal.Rptr. 87 (1972). Thus, the personnel director may not be appointed and removed from office by the mayor as provided for in revised charter section 8-9.3.

Affirmed in part and reversed in part, and remanded for further proceedings not inconsistent with this opinion.

*Yukio Naito (Shim, Sigal, Tam & Naito* of counsel) for Plaintiffs-Appellants.

*Paul Devens,* Special Counsel *(Paul R. Mancini,* Corporation Counsel, with him on the brief), for Defendants-Appellees.

### CONCURRING AND DISSENTING OPINION OF KIDWELL, J.

The caseload of this court imposes a significant restraint on the writing of extended separate opinions, and especially on one which would explore the mysteries of judicial interpretation of statutes and constitutions. In this instance, I will express my reasons for not signing the majority opinion as briefly as is consistent with traditions of judicial courtesy.

I agree that state statutes prevail over the provisions of the Maui charter in every instance where the majority so concluded. I would also hold that the provisions of Chapter 13 of the Maui charter are similarly subject to the provisions of Chapter 281, Hawaii Revised Statutes. Although I depart from the result of the majority opinion only in this respect, I reach my conclusion by a materially different process from that of the majority.

Article VII, Section 2 of the 1968 Constitution grants to each county authority by its charter to determine its "executive, legislative and administrative structure and organization." This authority cannot be broader than the basic authority of the county to adopt a charter, which is confined to matters which are "for its own self-government." The powers granted to the counties by Section 2 of Article VII are, by Section 5, made subject to the power of the legislature to enact laws of state-wide concern. It seems quite apparent that Article VII reflects an assumption that matters relating to county self-government are not of state-wide concern, and that matters of state-wide concern do not pertain to county self-government.

Upon its adoption in 1968, Article VII cut across an existing body of statutes which prescribed both the structure and organization of county governments and the powers and functions of county officials and departments. The laws which they administered reflected, in varying degrees, elements of local concern and of state-wide concern. Article VII compelled a sorting out process, to which the legislature seems not have given any significant amount of attention. The present case requires that we participate in the sorting out process.

In my view, the essential difference between matters which pertain to county self-government and those which are of state-wide concern lies in whether the choices which a county makes are of significance only to the people of the county or are also of significance to the people of the state who do not reside in the county. Under this test, a county charter has constitutional superiority over state law with respect to the administrative structure and organization

which deals with those matters which are not of significance to the rest of the state. This over-simplification undoubtedly conceals great difficulties in the application of the test, but I am satisfied that, with the exception mentioned above, the results reached by the majority opinion satisfy the test.

Thus, I agree that the various charter provisions which prevail over state law under the majority opinion are part of the structure and organization of county self-government. Also, in my view, the application of the state civil service and compensation laws (Chapters 76 and 77, HRS) to individual county officers and employees, and the designation, qualifications, powers and functions of the officials who administer those laws, are matters of state-wide concern. Although given the labels of county officers, the officers empowered by Part III of Chapter 76 and Part II of Chapter 77 to administer these state statutes in each of the counties exercise the functions of state officers and a change by a county in the administrative structure contemplated by the state statute could frustrate its purpose. For that reason, I concur in the conclusion of the majority that charter provisions which are in conflict with Chapters 76 and 77 must bow to state law.

The officers designated by Chapter 281, HRS, to administer the state liquor control law are, in my view, in relationships with the state and the county which are not distinguishable in material respects from those of the county civil service officers. Notwithstanding the powers granted to the county liquor commissions to issue non-uniform regulations with respect to matters left to their discretion by Chapter 281, the policies to be implemented by such regulations are to be found in Chapter 281 rather than in county ordinances. Equally with respect to the civil service law, the compensation law and the liquor control law, the administration of the state law in each of the counties is a matter of state-wide concern which would be subject to frustration if the designation, qualifications, powers and functions of the officials named in the state statutes were not subject to state control, to the extent to which the state chooses to exercise control. Equally in each instance, therefore, these officials are part of

state government rather than county self-government in the sense in which I have attempted to reconcile the provisions of Article VII.

The majority opinion differentiates between civil service and liquor control, and concludes that "the regulation of the manufacture, importation and sale of intoxicating liquor within a county is a local concern", solely upon the authority of a report of the Senate Committee on Judiciary in 1963, relating to the statutory delegation to the county executive officers of authority to appoint the members of county liquor commissions. Yet the fact that the legislature followed the same policy in delegating the appointment of county civil service commissions to the county executive officers does not deter the majority from concluding that the civil service law prevails over charter provisions. The legislation to which the committee report pertained did not, in my view, make liquor control a function of county self-government. The legislature's intent to retain this governmental function to the state, as it did the administration of the civil service and compensation laws, is to be found in the legislation as enacted. Our task in this case is to examine that legislation in the context of Article VII of the 1968 Constitution. What was said in a legislative committee report in 1963, without reference to or knowledge of the concept of county self-government created by the 1968 Constitution, seems to me do have little weight in the present inquiry. In relying so exclusively on that committee report and failing to examine the administrative structure which the liquor control law provides, the majority opinion fails to sustain its conclusion.

Accordingly, I concur in the manner in which the majority opinion adjudicates this controversy, except for the determination that any of the provisions of Chapter 13 of the charter prevail over the provisions of Chapter 281, HRS, as to which I would reach the opposite conclusion.