HENRY JAMES HUIHUI, Petitioner, *v.* EDWIN SHIMODA, ACTING DIRECTOR, OAHU COMMUNITY CORRECTIONAL CENTER; STATE OF HAWAII, REAL PARTY IN INTEREST, Respondents

NO. 8563

CRIMINAL NO. 56406

MAY 17, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ.,
AND RETIRED JUSTICES OGATA AND MENOR
ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY LUM, J.

A petition for a writ of habeas corpus presents us, for the first time, with the question of the constitutionality of HRS § 804-3(b)(3)

(Supp. 1981), pursuant to which an accused must be denied bail if he is charged with a serious crime for which the proof is evident and the presumption great, where he is already free on bail on a felony charge. The petitioner initially argues that the trial judge erred in finding the proof evident and presumption great that petitioner committed the crimes for which he was charged, and additionally seeks our examination of the statute in light of the constitutional guarantees of equal protection of the laws, due process of law and bail. We find it unnecessary to review the trial judge's findings or to assess the statute's validity against the fourteenth amendment's equal protection clause, however, for we conclude that HRS § 804-3(b)(3) violates the bail provisions of the Hawaii Constitution and the due process clause of the fourteenth amendment.

## I.

Petitioner Henry James Huihui was indicted on November 19, 1981 for two counts of extortion in the first degree, a class B felony under HRS § 707-765(1)(a) (Supp. 1981) and two counts of extortion in the second degree, a class C felony under HRS § 707-764(1)(a) (Supp. 1981). Following a hearing on the government's motion to commit petitioner without bail, the first circuit court denied petitioner bail under HRS § 804-3(b)(3) because it found that (a) the extortion charges were "serious offenses" within the meaning of HRS § 804-3(b); (b) the proof was evident and the presumption great that petitioner committed the offenses; and (c) at the time of the indictment, petitioner was already free on $100,000 bail awaiting trial on various felony charges for which he was indicted on July 2, 1980. While incarcerated, petitioner sought the intervention of this court for a writ of habeas corpus directing the circuit court judge to hold a bail hearing and determine a reasonable amount of bail for petitioner to post as a condition for his pretrial release. We granted an expedited hearing because of the importance of the petitioner's liberty interest, and in a recent decision issued the requested writ.

## II.

Petitioner advances the threshold proposition that article I, section 12 of the Hawaii Constitution guarantees persons accused of

crimes the right to pretrial release subject to reasonable bail.[1] Acknowledging at the same time that this right may be curtailed for legitimate reasons, petitioner avers that the provision for the denial of bail in HRS § 804-3(b)(3) impermissibly infringed on his right to bail by conclusively presuming that persons charged with a serious crime while on bail on a felony charge pose a danger to the community or are not likely to appear at trial.

### III.

An initial inquiry into whether our state constitution guarantees accused persons a right to bail is necessitated by the particular wording of article I, section 12, which, like its federal counterpart,[2] fails to mention any such right. That provision of Hawaii's Bill of Rights recites as follows:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel nor unusual punishment inflicted. The court may dispense with bail if reasonably satisfied that the defendant or witness will appear when directed, except for a defendant charged with an offense punishable by life imprisonment.

When originally adopted in 1959,[3] the provision (then numbered article I, section 9) consisted only of the first sentence, which

---

[1] Petitioner raises an identical claim with respect to the eighth amendment to the United States Constitution, arguing initially that the excessive bail clause applies to the states through the fourteenth amendment's due process clause. While the Supreme Court has never so ruled, several federal and state courts have either assumed that it applies or have specifically ruled that it does. *See, e.g.,* Hunt v. Roth, 648 F.2d 1148 (8th Cir. 1981); *vacated as moot sub nom.* Murphy v. Hunt, 50 U.S.L.W. 4264 (1982); Pilkerton v. Circuit Court, 324 F.2d 45 (8th Cir. 1963); United States ex rel. Covington v. Coparo, 297 F. Supp. 203 (S.D.N.Y. 1969); Parker v. Roth, 202 Neb. 850, 278 N.W.2d 106 (1979), *cert. denied,* 444 U.S. 920 (1980). Nevertheless, we see no need to extend our discussion to encompass the federal bail provision's applicability or scope.

[2] The eighth amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

[3] Delegates to the 1950 Constitutional Convention of Hawaii drafted this state's first constitution, which was ratified by the electorate in 1950 and later amended by the people and approved by Congress by Act of March 18, 1959, Pub. L. 86-3, 73 Stat. 4. The constitution became the organic law of this state upon its admission into the Union on August 21, 1959.

closely follows the wording of the eighth amendment. The Committee of the Whole Report on the proposed Bill of Rights in fact indicated that the sentence was "taken from the 8th Amendment to the Federal Constitution, and will give this state the benefit of Federal decisions construing the same." Comm. Whole Rep. No. 5, I Proceedings of the Constitutional Convention of Hawaii of 1950, at 302 (1950). No other explanation of the excessive bail clause appears in the 1950 Constitutional Convention proceedings, and the provision was incorporated into Hawaii's Bill of Rights with virtually no debate.

We have acknowledged in the past "that the fundamental principle in construing a constitutional provision is to give effect to the intention of the framers and the people adopting it." *State v. Miyasaki,* 62 Haw. 269, 281, 614 P.2d 915, 922 (1980), *quoting HGEA v. County of Maui,* 59 Haw. 65, 80-81, 576 P.2d 1029, 1039 (1978). Here, where the 1950 Constitutional Convention delegates failed to provide specific guidance for interpreting article I, section 12, we shall, as they intended, refer to federal decisions construing the like language of the eighth amendment. Should we so decide, however, we shall not hesitate to "extend the protections of the Hawaii Bill of Rights beyond those of textually parallel provisions of the Federal Bill of Rights when logic and a sound regard for the purposes of those protections" so warrant. *State v. Miyasaki, supra* at 281, 614 P.2d at 922; *State v. Manzo,* 58 Haw. 440, 452, 573 P.2d 945, 953 (1977); *State v. Kaluna,* 55 Haw. 361, 369, 520 P.2d 51, 58 (1974). For it is our obligation to interpret and enforce the state constitution as the highest court of this sovereign state "not in total disregard of federal interpretations of identical language, but with reference to the wisdom of adopting these interpretations for our state." *State v. Miyasaki, supra* at 280, 614 P.2d at 922; *State v. Manzo, supra.*

The United States Supreme Court has never squarely confronted the question of whether a right to bail inheres in the eighth amendment,[4] and dicta from two of its most recent cases construing

---

[4] The question of an eighth amendment right to bail in fact faced the court this term in Murphy v. Hunt, No. 80-2165, an appeal from the Eighth Circuit Court of Appeals' decision in Hunt v. Roth, *supra,* in which the appeals court declared Nebraska's constitutional bail provision violative of an eighth amendment prohibition

the excessive bail clause have been viewed as supporting conflicting interpretations. *See United States v. Edwards,* 430 A.2d 1321, 1329-30 (D.C. App. 1981), *cert. denied,* 50 U.S.L.W. 3765; Borman, *The Selling of Preventive Detention* 1970, 65 Nw. L. Rev. 879, 901-03 (1971). In *Carlson v. Landon,* 342 U.S. 524 (1952),[5] the Supreme Court rejected the contention that the eighth amendment required the same reasonable bail for alien Communists under deportation charges as it did for citizens charged with bailable offenses. In support of its holding, the majority noted that the bail clause, like its predecessor in the English Bill of Rights, "has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail." *Id.* at 545. Observing that Congress has always been free to define bailable offenses despite the eighth amendment, the Court concluded that the excessive bail clause did not require bail to be set under the circumstances of the case. In *Stack v. Boyle,* 342 U.S. 1 (1951),[6] on the other hand, the Supreme Court, in reviewing the reasonableness of

---

against the unreasonable denial of bail. *See* discussion *infra.* The Supreme Court, in a recent *per curiam* opinion with Justice White dissenting, however, declared the appeal moot since petitioner, already convicted, would not have been entitled to pretrial bail as a remedy even with a favorable decision, and since this was not a case "capable of repetition, yet evading review." Murphy v. Hunt, No. 80-2165, slip op. at 4-5 (March 2, 1982).

[5] *Carlson* focused on a provision of the federal Immigration Act, Act of October 16, 1918, 40 Stat. 1012, as amended, 8 U.S.C. (1946 ed.) § 137 (as amended by the Internal Security Act of 1950, September 23, 1950, § 22), allowing the United States Attorney General to detain aliens without bail pending determinations as to their deportability, where there was reasonable cause to believe that their release on bail would endanger the welfare of the United States. Four petitioners and one respondent were held on charges that they were members of the Communist party and an organization advocating the violent overthrow of government, respectively. The case's chief holding was that the Attorney General's refusal to grant bail, guided by rational standards and not arbitrary or capricious, was a proper exercise of the discretion vested in him by the statute and not a violation of the fifth amendment's due process clause.

[6] *Stack* involved a determination of the reasonableness of bail fixed for twelve petitioners indicted with conspiring to violate the Smith Act, 18 U.S.C. (Supp. IV) §§ 371, 2385. Ruling that the setting of pretrial bail must be based on standards related to assuring the presence of the defendant at trial, the Court held that bail had not been properly determined since it had been set unusually high based solely on the fact of the indictment, without individual factual determinations as to the need for such amounts.

certain bail orders, spoke of pretrial release in terms of a "traditional right to freedom before conviction [which] permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Id.* at 4 (citation omitted).

The apparent conflict in tenor between these opinions is mirrored in a schism among the lower federal courts over the interpretation of the federal excessive bail clause. The federal courts generally stand in agreement that the eighth amendment does not guarantee an absolute right to bail. *See, e.g., United States v. Abrahams,* 575 F.2d 3 (1st Cir. 1978), *cert. denied,* 439 U.S. 821 (1978); *United States v. Smith,* 444 F.2d 61 (8th Cir. 1971), *cert. denied,* 405 U.S. 977 (1971); *Mastrian v. Hedman,* 326 F.2d 708 (8th Cir. 1964). *But see Trimble v. Stone,* 187 F. Supp. 483, 485 (D.C. Cir. 1960); Foote, *The Coming Constitutional Crisis in Bail* (pts. 1 & 2), 113 U. Pa. L. Rev. 959, 1125 (1965). Whether the eighth amendment insures any rights in the bail context beyond that to protection from excessive bail, however, has moved these courts to take essentially two divergent positions.[7]

The weight of the federal case authority appears to support the historical interpretation of the eighth amendment suggested by the Supreme Court in *Carlson v. Landon, supra,* in denying the existence of a general constitutional "right to bail." Duker, *The Right to Bail: A Historical Inquiry,* 42 Alb. L. Rev. 33, 89 (1977); *see e.g., United States v. Edwards, supra; United States v. Smith, supra; Koen v. Long,* 302 F. Supp. 1383 (E.D. Mo. 1969), *cert. denied,* 401 U.S. 923 (1971). One of the most recent proponents of this position, *United States v. Edwards, supra,* details the analytical framework for reaching the conclusion that history prevents the eighth amendment from being read as anything more than a check against the judiciary's setting of excessive bail where bail is allowed.

---

[7] The Sixth and Eighth Circuit Courts of Appeal have suggested as a third approach that a right to bail exists generally as "inherent in our American concept of liberty" instead of implicit in the eighth amendment, and therefore that any denial of bail must be consistent with "the procedural standards developed from the due process clause." Atkins v. People, 644 F.2d 543, 549 (6th Cir. 1981); *see* Mastrian v. Hedman, *supra* at 710.

In *Edwards,* defendant, charged first with armed rape and later with burglary, robbery and sodomy, was denied bail pursuant to D.C. Code § 23-1322 (1973) which allowed detention of arrestees charged with certain offenses for up to sixty days pending trial. On appeal, defendant alleged, *inter alia,* that the pretrial detention statute on its face violated his constitutional right to bail as implied in the eighth amendment. Following an exhaustive discussion of the excessive bail clause's history, the District of Columbia Court of Appeals denied defendant's claim, concluding that (a) the clause originated in the English Bill of Rights as a restriction on local justices who imposed excessive bail on prisoners charged with bailable offenses in avoidance of the Habeas Corpus Act of 1679;[8] (b) therefore, the clause, as a remedy against judicial abuse and not primarily a means of protecting individual liberty, did not imply a right to bail; (c) Congress, in adopting the Bill of Rights in 1789, incorporated the same "excessive bail" language without inserting an explicit guarantee of bail although it was free to do so; (d) several colonies, new states and Congress itself recognized the limits of the excessive bail clause by enacting laws specifically providing for bail as a matter of right; and (e) therefore, the eighth amendment must be interpreted as simply prohibiting excessive bail where bail is allowed by statute or constitution and not as providing the right to bail in every instance. *See generally* Duker, *supra;* Foote, *supra* (pt. 1); Meyer, *Constitutionality of Pretrial Detention* (pt. 1), 60 Geo. L. J. 1139 (1972);

---

[8] The Habeas Corpus Act of 1679, 31 Car. 2, c. 2 (1679) was one of a number of penal statutes beginning with the Statute of Westminster I, 3 Edw. 1, c. 15 (1275) which were directed at correcting abuses of judicial discretion in the granting of bail to the King's prisoners. Enactment of the Statute of Westminster, restricting local sheriffs' powers by enumerating bailable offenses for the first time, was followed by several centuries of abuse due to difficulties of enforcement, reserved power in the higher justices and Crown, and defective attempts at reform. The Habeas Corpus Act itself came fifty years after the Petition of Right of 1628, which prohibited the detention of any prisoner without a specific return identifying the causes for his incarceration that would facilitate a determination of the propriety of the detention. Courts were nonetheless able to unduly detain prisoners and frustrate the goals of the Petition of Right by taking long periods of time to make returns of habeas corpus. The Habeas Corpus Act, while closing this loophole by establishing a means of enforcing bail and habeas corpus rights, opened another by recognizing discretion in the judges in the setting of bail, inevitably leading to abuse in the form of their setting prohibitively high bail. This problem was addressed by clause 10 of the Bill of Rights of 1689, the excessive bail clause. *See generally* Duker, *supra,* 42 Alb. L. Rev. at 58-66.

*see also Ex Parte Watkins,* 32 U.S. (7 Pet.) 568 (1833). Finally, the court rejected the distinction defendant attempted to draw between the English theory of civil liberties, in which Parliament is the ultimate source of rights, and the American form of government, in which the constitution reigns supreme, in arguing against interpreting the eighth amendment as an intended limitation on the judiciary. It reiterated in response that the framers of the Bill of Rights did not declare the right to bail a fundamental one deserving of protection against congressional encroachment.

Some of the same conclusions were reached in *Parker v. Roth,* 202 Neb. 850, 278 N.W.2d 106 (1979), *cert. denied,* 444 U.S. 920 (1979), a Nebraska Supreme Court case in which defendant challenged the constitutionality of a 1978 Nebraska constitutional provision reciting that "[a]ll persons shall be bailable by sufficient sureties except for treason, sexual offenses involving penetration by force or against the will of the victim, and murder, where the proof is evident or the presumption great." In rejecting defendant's assertion of a constitutional right to bail under the eighth amendment which had been violated by the Nebraska provision, the court recounted the history of the excessive bail clause in the English Bill of Rights and concluded that

> [t]he framers of the Constitution were well aware of the problems of bail in England, and could quite easily have provided that bail should be permitted for all offenses had they so intended. They were not, however, attempting to provide a new right in the new country, but instead were transferring an accepted, recognized principle that if an offense was bailable, the individual's right to freedom could not be defeated by requiring bail in excessive amounts.

*Id.* at 111. The court also noted that capital offenses have traditionally been excepted from state provisions allowing bail as a matter of right, while nothing in the language or history of the eighth amendment would exclude these offenses from any purported constitutional right to bail.[9] "Once a recognition that legislative bodies

---

[9] The historical exception for capital crimes from state constitutional or statutory guarantees of bail, again traceable to the English bail system and readily incorporated into federal and state laws pertaining to pretrial release, *see, e.g.,* Act of September 24, 1789, ch. 20, § 33, 1 Stat. 91, *as amended,* 18 U.S.C. § 3141 (1970), has been explained

had the right to exclude murder, treason, or capital offenses from bail is made, one is left with the inescapable conclusion that the Eighth Amendment simply prohibited excessive bail *where* allowed and did not guarantee the right to bail in every instance." *Id. See also In re Bowler,* 9 Haw. 171 (1893). While it conceded that the denial of bail altogether may constitute a violation of "some other provision of either the federal constitution or [the Nebraska] Constitution," *id.* at 110, the court maintained that the "Eighth Amendment to the federal constitution does not stand for the proposition that one has a constitutional right to bail." *Id.*

A growing number of federal circuit and district courts, on the other hand, reject the proposition arising out of the *Edwards* and *Parker* analyses that the eighth amendment's operation depends entirely upon an antecedent legislative act creating a right to bail. *See, e.g., Finetti v. Harris,* 609 F.2d 594 (2d Cir. 1979); *United States ex rel. Goodman v. Kehl,* 456 F.2d 863 (2d Cir. 1972) (in dicta); *United States v. Motlow,* 10 F.2d 657 (7th Cir. 1926); *United States ex rel. Covington v. Coparo, supra; United States ex rel. Fink v. Heyd,* 287 F. Supp. 716 (E.D. La. 1968), *aff'd,* 408 F.2d 7 (5th Cir. 1969), *cert. denied,* 396 U.S. 895 (1969); *Wansley v. Wilkerson,* 263 F. Supp. 54 (W.D. Va. 1967); *accord, Martin v. State,* 517 P.2d 1389 (Alas. 1974). The Eighth Circuit Court of Appeals' decision in *Hunt v. Roth, supra,* although recently vacated as moot in *Murphy v. Hunt,* 50 U.S.L.W. 4264, provides the most recent and comprehensive analysis of the position that the eighth amendment must be interpreted as guaranteeing more than merely protection against excessive bail.

The defendant in *Hunt* was charged with several sexual assault and forcible sexual assault offenses. The state district court refused to set bail, relying on the same Nebraska constitutional provision sustained in *Parker v. Roth, supra.* Notwithstanding principles of comity,

---

by the pragmatic observation that "most defendants facing a possible death penalty would likely flee regardless of what bail was set, but . . . those facing only a possible prison sentence would not if bail was sufficiently high." United States v. Kennedy, 618 F.2d 557, 559 (9th Cir. 1980). Blackstone couched this explanation in the following interrogative: "For what is there that a man may not be induced to forfeit, to save his own life? and what satisfaction or indemnity is it to the public, to seize the effects of them who have bailed a murderer, if the murderer himself be suffered to escape with impunity?" 4 W. Blackstone, Commentaries on the Laws of England 294 (4th ed. 1770). *See generally* Duker, *supra,* 42 Alb. L. Rev. at 110-11.

the court of appeals declared the Nebraska provision violative of the eighth amendment, rejecting the state's reading of the excessive bail clause as allowing it to refuse bail without running afoul of the constitution. Relying on *United States ex rel. Goodman v. Kehl, supra,* the court held that logic was sufficient to warrant reading the excessive bail clause so as to prohibit the denial of bail in the absence of legitimate reasons, as well as excessive bail which, in constitutional terms and in practice, amount to the same thing. Recognizing on one hand that in certain cases no amount of bail may be sufficient to protect society's primary interest in obtaining assurance that the accused will appear for trial, the court believed, on the other hand, that

> it is quite another thing to say that the eighth amendment would permit outright denial of bail without consideration of the factors relevant to an individual's suitability for pretrial release; at least in the eyes of the accused, an unreasonable and arbitrary *denial* of bail is surely the equivalent to an unobtainably high amount of bail that is set unreasonably and arbitrarily.

*Id.* at 1158. In answer to the historical interpretation of the bail clause proffered by the state, the court noted that an analysis of the English common law and its adaptation in the colonies does not necessarily support a literal reading of the eighth amendment since (a) Congress operates under the limits of the constitution, which "was our assurance that many abuses suffered under English rule would not be passed on to our people," *id.* at 1159; (b) the colonial laws reveal that the American concept of bail differed significantly from the English in that bail was considered a right of all accuseds except those charged with capital offenses; and (c) the traditional exception for capital crimes from statutory bail requirements does not support a legislative power to deny bail in noncapital cases as there are historical as well as logical bases for the capital crimes exception.[10] *See also Carlson v. Landon, supra* at 556-57 (Black, J., dissenting). The *Hunt* court found the Nebraska bail provision violative of the eighth amendment for its conclusive presumption that those charged with the enumerated offenses were likely to pose a danger to the community or not appear at trial if released on bail,

---

[10] *See* note 9 *supra.*

without allowing the judge to make these determinations on an individual basis with relevant information and with no empirical evidence supporting such presumptions in noncapital cases.

We acknowledge the vital role that history must play in determining the intent of the framers of the eighth amendment, especially since its incorporation into the federal Bill of Rights occurred with little discussion or debate to guide us, two centuries later, in ascertaining its full import. Tribe, *An Ounce of Detention: Preventive Justice in the World of John Mitchell,* 56 Va. L. Rev. 371, 398 (1970). But here, where the interpretation most strongly supported by history conflicts with "logic and a sound regard for the purposes" of the excessive bail clause, *State v. Miyasaki, supra,* we find it incumbent upon us to follow the latter course and adopt the reasoning of *Hunt* in interpreting our state bail provision. To read article I, section 12 as forbididing the judiciary to impose *excessive* bail while allowing the legislature to do away with bail altogether would indeed give the bail clause a "weird, devitalizing interpretation" which reduces it "below the level of a pious admonition," *Carlson v. Landon, supra* at 556 (Black, J., dissenting), for the provision would "do no more than protect a right to bail which [the legislature] can grant and which [the legislature] can take away." *Id.* As observed by Justice Mack in her dissenting opinion in *United States v. Edwards, supra,* with respect to the federal bail clause,

> [t]his is a classic example of the cart pulling the horse since the Congress could abrogate the right to bail altogether, making the Eighth Amendment altogether meaningless. Surely the framers of our Bill of Rights did not intend to fashion illusory protection — leaving open the possibility that a subsequent act of a legislature could empty a *critical* provision of the federal constitution of all content.

430 A.2d at 1365.

Moreover, like the courts in *Hunt v. Roth, supra,* and *United States ex rel. Goodman v. Kehl, supra,* "we perceive no constitutional distinction between requiring excessive bail and denying bail altogether in the absence of legitimate reasons." *Id.* at 868. Consistent with the characterization of bail as reflecting a balancing of the accused's interest in pretrial freedom with society's interests, *inter alia,* in obtaining his presence at trial, *see Hunt v. Roth, supra* at 1157, Duker, *supra* at 101, the Supreme Court has required that the fixing of bail

be based on standards relevant to those interests in the particular circumstances of the case and the accused's suitability for pretrial release. *Stack v. Boyle, supra* at 5; *accord, Hunt v. Roth, supra.* An amount which is set higher than necessary to fulfill these interests is unreasonable and "excessive" within the meaning of the eighth amendment. *Stack v. Boyle, supra.* It therefore defies logic to interpret that constitutional provision as prohibiting bail set so unreasonably high as to be unobtainable and not reflective of legitimate state concerns on one hand, while on the other as permitting the outright denial of bail absent reasonable grounds, since both actions, under like circumstances, amount to the same thing. Accordingly, we hold that article I, section 12 of the Hawaii Constitution, prohibiting excessive bail, also protects persons accused of crimes from the unreasonable or arbitrary denial of bail.

## IV.

We now turn to the question of whether HRS § 804-3(b)(3) unreasonably denies bail in violation of article I, section 12 of the state constitution. HRS § 804-3 (Supp. 1981), in its entirety, provides as follows:

*Bailable offenses.* (a) For purposes of this section, "serious crime" means a class A or B felony, except forgery in the first degree and failing to render aid under section 291C-12, and "bail" includes release on one's own recognizance.

(b) *Any person charged with a criminal offense shall be bailable by sufficient sureties; provided that no bail shall be allowed where the charge is for a serious crime where the proof is evident and the presumption great,* and

(1) The offense is punishable by imprisonment for life not subject to parole; or

(2) The defendant has been previously convicted of a serious crime within the ten-year period immediately preceding the date of the charge against him; or

(3) *The defendant is already on bail on a felony charge;* or

(4) The defendant is on parole.

(c) If a defendant has been admitted to bail on any charge, the prosecutor may move at any time for revocation of bail on the

grounds set out in subsection (b) above, and bail shall be revoked upon proof thereof.

(emphasis added). Prior to 1980, HRS § 804-3 recited simply that "[a]ll persons charged with criminal offenses shall be bailable by sufficient sureties, unless for offenses punishable by imprisonment for life not subject to parole, when the proof is evident or the presumption great."[11] The statute was augmented in 1980 to limit the availability of bail on the legislature's belief that some restrictions were necessary in dealing "more harshly with persistent offenders who have abused the bail privilege in the past and present a clear danger to society." Senate Stand. Comm. Rep. No. 756, *reprinted in* Senate Journal 1366, 1366 (1980). Subsections (b)(2) and (3) were aimed specifically at repeat offenders. Senate Conf. Comm. Rep. No. 85, *reprinted in* Senate Journal 1004, 1005 (1980).

Petitioner's argument against the statute's validity is two-fold. First, he claims that prevention of future crimes is not a legitimate concern for a court to consider when fixing bail, and therefore that HRS § 804-3(b)(3), requiring the denial of bail on a presumption of an accused's guilt and dangerousness, violates the accused's due process and bail rights. Second, petitioner complains that even assuming the propriety of preventive detention, HRS § 804-3(b)(3) is impermissibly grounded upon an irrebuttable presumption that every person charged with a serious crime while on bail on a felony charge poses a danger to the community, again in derogation of the accused's right to due process and bail.

The question of the constitutionality of pretrial preventive detention in both right to bail and due process contexts has long plagued courts and commentators. In the bail setting, those courts which have sanctioned preventive detention have generally found the threat of danger to the community to be a legitimate, rational concern which a judge may take into account when setting or denying bail. *See, e.g., United States ex rel. Covington v. Coparo, supra* at 207; *Wansley v. Wilkerson, supra* at 57; *Rendel v. Mummert,* 106 Ariz. 233, 474 P.2d 824, 828-29 (1970). Others have found an inherent power

---

[11] This statute was amended only once since its enactment in 1892, when capital punishment was abolished in this state in 1957. At that time, the term "capital offenses" in the original statute was replaced by the phrase "imprisonment for life not subject to parole." *See* Act 282, 1957 SLH at 314.

in the court to deny bail in order to protect against interference in the criminal process as where an accused has threatened witnesses. *See, e.g., United States v. Bigelow,* 544 F.2d 904, 907-08 (6th Cir. 1976); *Mastrian v. Hedman, supra* at 712; *Nail v. Slayton,* 353 F. Supp. 1013, 1019 (W.D. Va. 1972). Opponents, however, claim that the denial of bail to protect the community is inconsistent with state constitutional or statutory provisions granting a right to bail in noncapital cases, in that the sole purpose of bail traditionally recognized is the securing of the defendant's assurance that he will appear at trial. *See Stack v. Boyle, supra* at 5; *Ex Parte Milburn,* 34 U.S. (9 Pet.) 704, 710 (1835). *See generally* Duker, *supra* at 67-70. As there is no evidence in history that bail was ever intended as a deterrent against the commission of crimes between indictment and trial, Tribe, *supra* at 400-01, and in view of the difficulty in accurately estimating one's dangerous propensities, these courts generally maintain that bail may not constitutionally be denied solely on an estimated likelihood of danger to the community or interference with the judicial process. *See e.g., Martin v. State, supra; In re Underwood,* 9 Cal.3d 345, 107 Cal. Rptr. 401, 508 P.2d 721 (1973); *State v. Pray,* 133 Vt. 537, 346 A.2d 227 (1975). *See generally* Tribe, supra; Note, *Preventive Detention Before Trial,* 79 Harv. L. Rev. 1489 (1966).

The more controversial aspect of the idea that an accused may be incarcerated prior to an adjudication of guilt on an assumption of his dangerousness, however, is its apparent conflict with the notion basic to our criminal jurisprudence and purportedly lodged in the fourteenth amendment that every accused is presumed innocent until proven guilty. *See generally* Note, *supra.* Those who object to preventive detention on due process grounds point out that our penal system punishes for the commission of past crimes, not for the presumed likelihood of future offenses based merely on the fact that an individual has been accused. *See Commonwealth v. Truesdale,* 449 Pa. 325, 296 A.2d 829 (1972); Hickey, *Preventive Detention and the Crime of Being Dangerous,* 58 Geo. L. J. 287 (1969). As stated by Circuit Justice Douglas in *Carbo v. United States,* 82 S. Ct. 662 (1962), the "[d]enial of bail should not be used as an indirect way of making a man shoulder a sentence for unproved crimes." *Id.* at 667. The argument in response, however, is that the presumption of innocence, a doctrine allocating the burden of proof in criminal trials, has no application in pretrial stages to prevent the imposition of

restraints on individuals accused of crimes. *Rendel v. Mummert, supra; Blunt v. United States,* 322 A.2d 579 (D.C. App. 1974); *see Bell v. Wolfish,* 441 U.S. 520, 533 (1979). Preventive detention, moreover, although a purposeful incapacitation of the detainee, does not amount to "punishment" as defined by the Supreme Court, *see Bell v. Wolfish, id.* at 537-39, as its function is regulatory, related to a legitimate governmental objective, and not intended to promote the traditional aims of punishment — retribution and deterrence. *See United States v. Edwards, supra* at 1332-33; *see also Rendel v. Mummert, supra* at 828-29.

Despite these conflicting considerations, we believe that this state has a legitimate interest in protecting its communities from those who threaten their welfare, and that this interest may be taken into account in the setting of pretrial bail. But the manner in which the legislature allows this and other legitimate, recognized state concerns to be reflected in the bail decision, should it choose to do so by statute, must also be reasonable and satisfy the minimal demands of procedural due process as necessitated by the fact that pretrial detention denies an accused his liberty without a formal adjudication of guilt. *United States v. Edwards, supra* at 1334; *Atkins v. People,* 644 F.2d 543 (6th Cir. 1981), *cert. denied,* 101 S. Ct. 3115 (1981). *Cf. Morrissey v. Brewer,* 408 U.S. 471, 482-83 (1972) (due process requirements apply to parole revocation). In *Escander v. Ferguson,* 441 F. Supp. 53 (S.D. Fla. 1977), for example, a Florida constitutional bail provision was construed as improperly prohibiting bail in cases involving felonies punishable by life imprisonment where the proof was evident and the presumption great that the accused had committed the crime. The provision in effect created an irrebuttable presumption that the accused would not appear at trial solely from the nature and proof of the charge, as the accused was not afforded the opportunity to establish, notwithstanding proof of the charge, that he was a good bail risk. As the presumption that he would not appear at trial was not "necessarily or universally true in fact," and because the state had a "reasonable alternative means of making the crucial determination" of the likelihood of defendant's appearance through a fair hearing, *id.* at 59-60 (quoting *Vlandis v. Kline,* 412 U.S. 441, at 446 (1973)), the court held that the provision swept too broadly in violation of the fourteenth amendment's due process clause. This holding is consonant with the conclusion of the District

of Columbia Court of Appeals in *United States v. Edwards, supra,* that pretrial detention, by implicating a liberty interest, requires a fair hearing "within the mandates of procedural due process." 430 A.2d at 1334. *Cf. Hunt v. Roth, supra* at 1664-65 (provision denying bail to class of individuals based on irrebuttable presumptions of dangerousness or likelihood of flight violates eighth amendment).

In the present case, HRS § 804-3(b)(3) similarly exceeds the bounds of reasonableness and due process by conclusively presuming a defendant's dangerousness from the fact that he had been charged previously with a serious crime and presently with a felony, and by leaving no discretion in the trial judge to allow bail based on other factors which may be directly relevant to a determination of the likelihood of the defendant's committing other crimes while free pending trial.[12] The statute simply reflects a legislative determination that an entire class of accused persons is not entitled to bail by reason of their presumed dangerousness, without affording these persons a fair opportunity to rebut such presumption. Judges acting pursuant thereto, denied discretion to consider other circumstances, are thus required to arbitrarily deny these individuals bail solely on the nature and proof of the crimes charged. Indeed, the record in this case indicates that the trial judge considered the statutory language mandatory and did not take into account any facts or circumstances other than those relevant to the petitioner's participation in the crimes for which he was charged before denying bail.

Additionally, we observe that the statute, by forbidding the granting of, much less dispensing with bail in the enumerated circumstances, should either be deemed appropriate by the trial judge, runs afoul of the second sentence of article I, section 12 of the Hawaii Constitution which recites that "[t]he court may dispense with bail if reasonably satisfied that the defendant or witness will appear when directed, except for a defendant charged with an offense punishable by life imprisonment." This provision, unique to

---

[12] These factors may include "the nature and circumstances of the offense charged, the accused's family ties, employment, financial resources, character and mental condition, the length of the residence in the community, the record of prison convictions and the record of appearance at court proceedings or flight to avoid prosecution," Hunt v. Roth, *supra* at 1164, as well as known propensities of the accused.

Hawaii, was added in 1968 with the intent to "clarif(y) the scope with respect to the requirement of bail and . . . remove doubt, if any, as to the discretionary powers of the court in the matter of bail." II Proceedings of the Constitutional Convention of Hawaii of 1968, at 13 (1968) (remarks of Delegate Young); *accord,* Stand. Comm. Rep. No. 55, I Proceedings of the Constitutional Convention of Hawaii of 1968, at 234 (1968). The Committee on Bill of Rights, Suffrage and Elections emphasized that this second sentence merely reflected the bail procedure then being followed by courts under statutes "implementing the existing section 9" (presently section 12), which provided for bail as a matter of right in noncapital cases with discretion in the trial judge in setting the amount to be required. *See* HRS ch. 709 (1968) (renumbered HRS ch. 804 (1976 & Supp. 1981)). While the added language does not prohibit the court from denying bail to a particular defendant, it clearly contemplates the existence of discretion in the trial judge to release the defendant with or without the requirement of bail, which discretion is abolished by the 1980 statute.

We therefore hold that HRS § 804-3(b)(3), by the unreasonable manner in which it provides for the denial of bail, violates both provisions of article I, section 12 of the Hawaii Constitution and the due process clause of the fourteenth amendment to the United States Constitution.

Our previous decision granting petitioner's writ for habeas corpus is incorporated herein by reference.

*Brook Hart, Peter C. Wolff, Jr., Michael D. Wilson, (Hart and Wolff,* Attorneys at Law, a Law Corporation), for petitioner.

*James H. Dannenberg,* Deputy Attorney General, and *Arthur E. Ross, Peter B. Carlisle,* Deputy Prosecuting Attorneys, for respondents.