STEVE COBB, Plaintiff, *v.* STATE OF HAWAII, by CORINNE K. A. WATANABE, its Attorney General, Defendant

NO. 11439

JULY 28, 1986

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND
INTERMEDIATE COURT OF APPEALS
ASSOCIATE JUDGE WALTER M. HEEN
IN PLACE OF ASSOCIATE JUSTICE JAMES H. WAKATSUKI, RECUSED

OPINION OF THE COURT BY LUM, C.J.

The question raised by this original proceeding is whether article II, section 7 of the Hawaii State Constitution requires Plaintiff Steve Cobb to resign his State Senate seat in order to become a candidate for the United States House of Representatives. Cobb contends that article II, section 7 applies only to elected state and county officials who seek other state or county offices and not to candidates for federal offices.

Having reviewed the record and the relevant constitutional provisions, we cannot say with any certainty that the drafters of article II, section 7 intended for it to apply to candidates for federal offices. In view of the uncertainty, we conclude that Cobb should not have to resign from the State Senate in order to run for Congress.

I.

Cobb is the State Senator for the 12th Senatorial District His term began on November 6, 1984 and ends on November 8, 1988. Cobb has expressed an intention to run for the United States House of Representatives.

Article II, section 7 was drafted by delegates to the 1978 State Constitutional Convention and was subsequently adopted by the voters at a general election. It provides:

Any elected public officer shall resign from that office before being eligible as a candidate for another public office, if the term of the office sought begins before the end of the term of the office held.[1]

We note at the outset that this provision is ambiguous on its face. Its framers used "public" to modify both "officer" and "office "

When resolving ambiguity, we have repeatedly held "that the fundamental principle in construing a constitutional provision is to give effect to the intention of the framers and the people adopting it." *Huihui v. Shimoda,* 64 Haw. 527, 531, 644 P.2d 968, 971 (1982) (quoting *State v. Miyasaki,* 62 Haw. 269, 281, 614 P.2d 915, 922 (1980), quoting *HGEA v. County of Maui,* 59 Haw. 65, 80-81, 576 P.2d 1029, 1039 (1978)).

In construing article II, section 7, we are further bound by the settled rule that "[i]n the construction of a constitutional provision . . . the words of the constitution are presumed to be used in their natural sense . . . 'unless the context furnishes some ground to control, qualify or enlarge [them].'" *State ex rel. Amemiya v. Anderson,* 56 Haw. 566, 577, 545 P.2d 1175, 1182 (1976) (quoting *Employees' Retirement System v. Budget Director Ho,* 44 Haw. 154, 159, 352 P.2d 861, 864-65 (1960)). Unfortunately, neither the provision nor the convention's history sets forth what "public" was intended to include.

It is beyond dispute that every "resign to run" provision carries a disability that impinges to some degree on the rights of voters and candidates to choose and be chosen. *See Anderson v. Celebreeze,* 460 U.S. 780 (1983); *Clements v. Fashing,* 457 U.S. 957, *reh'g denied,* 458 U.S. 1133 (1982). For this reason, we are extremely reluctant to read

---

[1]Pursuant to Hawaii Revised Statutes (HRS) § 659-3 (1976), the State Attorney General may bring a *quo warranto* action against a public official who runs for public office in violation of article II, section 7 to force him to resign.

into article II, section 7 any resignation requirement that was not clearly intended.

Cobb contends that the drafters clearly intended not to include federal officers and offices within the meaning of "public" because the result would have been an unconstitutional provision.[2] *See Powell v. McCormack,* 395 U.S. 486 (1969).

The State concedes that the drafters intended "public officer" to include only state and county office holders. However, it argues that they intended "public office" to encompass federal offices as well. The State contends that the purpose of article II, section 7 is to limit the campaign activities of office holders and that the nature of the office being sought is therefore irrelevant.[3]

We cannot accept the State's position that the drafters intended to define "public" one way in reference to public officers and another way in reference to public offices. This seems illogical and inconsistent.

Accordingly, we conclude that the drafters did not manifest a clear intent to include candidates for federal office within the scope of article II, section 7 and hold that Cobb will not have to resign from the State Senate in order to run for Congress.

*Michael A. Lilly* for Plaintiff.

*Deborah Day Emerson (Charleen M. Aina* with her on the brief), Deputy Attorneys General, for Defendant.

### DISSENTING OPINION OF NAKAMURA, J., WITH WHOM INTERMEDIATE COURT OF APPEALS ASSOCIATE JUDGE HEEN, JOINS

The court chooses not to give effect to a constitutional provision

---

[2] Cobb raises several constitutional arguments including the argument that state regulation of federal office seekers violates the qualifications clause of the United States Constitution. *See* U.S. Const. art. I, § 2, cl. 2. We find it unnecessary to address these issues here.

[3] We acknowledge that a convention committee report articulated the purpose of article II, section 7 as being to keep voters from being saddled with elected public officers "who no longer wish to fulfill the duties of the office to which he was elected[.]" However, we are not persuaded that the drafters intended to include candidates for federal office. Indeed, there is evidence in the record that some delegates were concerned about potential constitutional problems that might result from the inclusion of federal candidates within the scope of the provision.

because it is ambiguous. Unlike my colleagues who reach this conclusion, I find article II, section 7 of the Hawaii Constitution clear and unambiguous and would give effect to the intention of the framers and the people who adopted it by ruling that a member of the State Legislature cannot use his elected office "as a safe haven from which to make [a] political foray[] and return if he proves unsuccessful." Standing Committee Report No. 72, Committee on Bill of Rights, Suffrage and Election, Proceedings of the Constitutional Convention of Hawaii of 1978, Vol. I, at 678.

I.

Article II, section 7 was proposed for adoption during the latest decennial review of the State's fundamental law. The proposal was advanced by the Committee on Bill of Rights, Suffrage and Election of the Constitutional Convention of 1978, whose members felt

it would be justified to require a person to resign from office before becoming eligible to run for another public office with an overlapping term. By running for another office, the person is in effect saying that he no longer wishes to fulfill the responsibilities of the office to which he was elected, and accordingly he should resign from that office. The voters should not be saddled with an elected public official who no longer wishes to fulfill the duties of the office to which he was elected and will do so only if he fails to win election to the other office. This is not fair to the voters, who elected him to serve a full term, and is a violation of the public trust.

*Id.* The "Committee [thus] present[ed] for consideration [by the constituent assembly] the following language:

*'Section . An elected public officer shall resign from that office before being eligible as a candidate for another public office, if the term of the office sought begins before the end of the term of the office held.'"*

*Id.* (underscoring in original).

That this language was expressly designed to discourage political opportunism was reiterated when the Committee went on to say:

Your Committee does not believe it would be warranted for a candidate to resign if the office he is seeking has a concurrent term. In this case, he is in effect resigning since, if he loses the election, he does not have an office to return to. He is not abusing his elected

office by using it as a safe haven from which to make political forays and return if he proves unsuccessful.

*Id.* My colleagues in the majority condone an opportunistic foray condemned as a breach of public trust because it "cannot [be said] with any certainty that the drafters of article II, section 7 intended for it to apply to candidates for federal offices." I cannot agree, for the drafters have said in no uncertain terms that a holdover state senator must resign to run for another public office.

## II.

The court's opinion concedes "the fundamental principle in construing a constitutional provision is to give effect to the intention of the framers and the people adopting it." *HGEA v. County of Maui,* 59 Haw. 65, 80-81, 576 P.2d 1029, 1039 (1978) (citations omitted). Yet the majority reaches a conclusion that the framers could not have meant to apply the resign-to-run provision in the situation before us. The decision to pay no heed to the clear command of article II, section 7 and its manifest purpose and policy is rationalized on the ground that the provision "is ambiguous on its face" because the word "public" may have two meanings. I am mindful, of course, that when language susceptible of two constructions is employed in a criminal statute, normally that " 'which is more favorable to the offender will be adopted' " by the court. *State v. Rodgers,* 68 Haw. 445, 450, 718 P.2d 275, 278 (1986) (quoting *People v. Ralph,* 24 Cal. 2d 575, 581, 150 P.2d 401, 404 (1944)) (citations omitted). But we are expounding a constitutional provision, and the notion that an ambiguity is to be resolved by construing a word strictly against the drafters is foreign to constitutional interpretation.

If the language in question is ambiguous as claimed, it is then incumbent upon the court to construe the provision with the "object sought to be accomplished and the evils sought to be remedied . . . in mind." *HGEA v. County of Maui,* 59 Haw. at 81, 576 P.2d at 1039. For the "State constitution[] must be construed with due regard to the intent of the framers." *State v. Lester,* 64 Haw. 659, 667, 649 P.2d 346, 352-53 (1982) (citation omitted). By disregarding its purpose, the majority renders article II, section 7 ineffectual where the most sizeable group of officeholders capable of launching political forays for more powerful, prestigious, and lucrative federal offices from the safe haven of state

offices is concerned. "If we remember that 'it is a Constitution we are expounding,' we cannot rightly prefer, of the possible meanings of its words, that which will defeat rather than effectuate the constitutional purpose." *United States v. Classic,* 313 U.S. 299, 316 (1941).