76 F.3d 280
 96 Cal. Daily Op. Serv. 752, 96 Daily Journal
D.A.R. 1174
Pai 'OHANA, an unincorporated association, Plaintiff-Appellant,
v.
UNITED STATES of America; Bryan Harry, in his capacity as
the Pacific Area Director of the National Park
Service, U.S. Department of the
Interior, Defendants-Appellees.
 No. 95-15202.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 3, 1995.
Decided Feb. 2, 1996.
 
 Arnold L. Lum, Honolulu, Hawaii, for the plaintiff-appellant.
 M. Alice Thurston, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., for the defendants-appellees.
 Appeal from the United States District Court for the District of Hawaii; David Alan Ezra, District Judge, Presiding.
 Before: HUG, THOMPSON, and O'SCANNLAIN, Circuit Judges.
 OPINION
 HUG, Circuit Judge:
 
 
 1
 Following the submission of the parties' briefs in this case, appellants brought the recent decision of the Hawaii Supreme Court in Public Access Shoreline Hawaii v. Hawaii County Planning Comm'n, 79 Hawai'i 425, 903 P.2d 1246 (1995) ("PASH II "), to our attention pursuant to F.R.A.P. 28(j). Appellants relied heavily on the reasoning of this new opinion at oral argument. Prior to the close of oral argument, we thus requested supplemental briefing regarding the PASH II decision, and deferred our decision in this case until receipt of the supplemental briefs.
 
 
 2
 Having now reviewed the parties' supplemental briefing, we affirm substantially for the reasons given by Judge Ezra in his excellent opinion. We write briefly to clarify our determination in light of PASH II.
 
 
 3
 Native Hawaiian tenant rights indisputably derive from three distinct sources. Article XII of the Hawaii Constitution protects "all rights, customarily and traditionally exercised for subsistence, cultural and religious purposes and possessed by ahupua'a tenants who are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778, subject to the right of the State to regulate such rights." Haw.Rev.Stat. § 7-1 (1992) enumerates the certain rights of access to the property of others that are held by native tenants, such as the right to gather fruit, plants, and timber, and the right to obtain drinking water. Finally, Haw.Rev.Stat. § 1-1 (1992) allows the state to "establish certain customary Hawaiian rights beyond those found in § 7-1." Pele Defense Fund v. Paty, 73 Haw. 578, 837 P.2d 1247, 1270 (1992).
 
 
 4
 Appellants argue that the above-described provisions should be read in conjunction to vest them with the right to exclusively occupy and use the 'Ai'opio fish trap, located within the Kaloko-Honokohau National Historic Park. They contend that Pele Defense Fund and PASH II support the proposition that "use and occupation of land according to ancient custom is accorded legal protection under Hawaii common law."
 
 
 5
 In PASH II, the Hawaii Supreme Court allowed a native Hawaiian group access to an undeveloped portion of land on the island of Hawaii in order to harvest shrimp for their personal use. The court explained that the "common law rights ordinarily associated with tenancy do not limit customary rights existing under the laws of [Hawaii]." 903 P.2d at 1269. In so holding, the Hawaii Supreme Court reiterated the fact, well-established in Hawaiian property law, that "[c]ustomary and traditional rights ... flow from native Hawaiians' pre-existing sovereignty," and were not extinguished by Hawaii's entry into the United States. Id. at 1270.
 
 
 6
 As mentioned above, appellants assert that PASH II supports their claim of rights to exclusively use and occupy the land that is the subject of this dispute. It is clear, however, that no such rights can be derived from PASH II. PASH II did not involve any claim for exclusive use and possession. See id. at 1271; Haw.Rev.Stat. § 7-1.
 
 
 7
 Hawaiian history has proven that the scope of native tenants' rights is significantly more narrow than asserted by appellants. Hawaii Housing Authority v. Lyman, 68 Haw. 55, 704 P.2d 888, 892 n. 3 (1985), explains that the Hawaiian Usage clause does not support the proposition that native tenants possess exclusive use and occupancy rights over kuleana lands they failed to claim. Instead, prior to the Kuleana Act, native tenants remained on the land "at the will of the sovereign or superior, subject always to dispossession and redivision." Id. Ancient custom did not include the right to remain upon and exclude others from the land. Reppun v. Board of Water Supply, 65 Haw. 531, 656 P.2d 57, 68 (1982). Appellants' contention that native Hawaiian rights are exclusive and possessory is, therefore, unsupported in the law.
 
 
 8
 AFFIRMED.