**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SYNGENTA SEEDS, INC., a Delaware corporation; SYNGENTA HAWAII, LLC; PIONEER HI-BRED INTERNATIONAL, INC., an Iowa corporation; AGRIGENETICS, INC., a Delaware corporation; BASF PLANT SCIENCE LP, a Delaware limited partnership, *Plaintiffs-Appellees*, <br><br> v. <br><br> COUNTY OF KAUAI, *Defendant-Appellant*, <br><br> and <br><br> KA MAKANI HO'OPONO; CENTER FOR FOOD SAFETY; PESTICIDE ACTION NETWORK NORTH AMERICA; SURFRIDER FOUNDATION, *Intervenor-Defendants*. | No. 14-16833 <br><br> D.C. No. 1:14-cv-00014-BMK |

SYNGENTA SEEDS, INC., a
Delaware corporation;
SYNGENTA HAWAII, LLC;
PIONEER HI-BRED
INTERNATIONAL, INC., an Iowa
corporation; AGRIGENETICS,
INC., a Delaware corporation;
BASF PLANT SCIENCE LP, a
Delaware limited partnership,
          *Plaintiffs-Appellees*,

          v.

COUNTY OF KAUAI,
                    *Defendant*,

          and

KA MAKANI HO'OPONO;
CENTER FOR FOOD SAFETY;
PESTICIDE ACTION NETWORK
NORTH AMERICA; SURFRIDER
FOUNDATION,
          *Intervenor-Defendants-*
                    *Appellants.*

No. 14-16848

D.C. No.
1:14-cv-00014-BMK

OPINION

Appeal from the United States District Court
for the District of Hawaii
Barry M. Kurren, Magistrate Judge, Presiding

Argued and Submitted June 15, 2016
Honolulu, Hawaii

Filed November 18, 2016

Before:  Sidney R. Thomas, Chief Judge, and Consuelo M. Callahan and Mary H. Murguia, Circuit Judges.

Opinion by Judge Callahan

## SUMMARY[*]

### Hawaii State Law / Preemption

The panel affirmed the district court's conclusion that the Hawaii Pesticides Law impliedly preempted Kauai County's Ordinance 960's pesticide provisions, which regulate pesticides and genetically engineered plants; and affirmed the district court's denial of defendants' motion to certify the implied preemption question to the Hawaii Supreme Court.

Ordinance 960 imposes pesticide notification requirements and mandates "pesticide buffer zones." Kauai County Code § 22-23.5(a).  Part III of the Hawaii Pesticides Law regulates the use of pesticides, including where pesticides may be applied. HRS § 149A-31-149A-37.

The panel applied the Hawaii Supreme Court's "'comprehensive statutory scheme' test," *Richardson v. City & Cty. of Honolulu*, 868 P.2d 1193, 1208 (Haw. 1994), to decide plaintiffs' field-preemption claim under HRS § 46-1.5(13).  First, the panel held that Ordinance 960's pesticide

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

provisions and the Hawaii Pesticides Law addressed the same subject matter. Next, the panel held that the State's scheme for the regulation of pesticides was comprehensive. Finally, the panel held that the Hawaii legislature clearly intended for the State's regulation of pesticides to be uniform and exclusive. The panel concluded that Ordinance 960's pesticide provisions were impliedly preempted by Hawaii law and beyond the County's power.

The panel held that certification to the Hawaii Supreme Court was unnecessary because the State's test for implied state preemption was well-defined.

## COUNSEL

David J. Minkin (argued), Jesse J. T. Smith, and Troy H.H. Andrade, McCorriston Miller Mukai McKinnon LLP, Honolulu, Hawaii, for Defendant-Appellant.

Paul H. Achitoff (argued), Earthjustice, Honolulu, Hawaii; Sylvia Shih-Yau Wu and George A. Kimbrell, Center for Food Safety, San Francisco, California; for Intervenor-Defendants-Appellants.

Margery S. Bronster (argued), Donna C. Marron, and Rex Y. Fujichaku, Bronster Fujichaku Robbins, Honolulu, Hawaii; Christopher Landau (argued), Kirkland & Ellis LLP, Washington, D.C.; Clair Wong Black and Paul Alston, Alston Hunt Floyd & Ing, Honolulu, Hawaii; for Plaintiffs-Appellees.

# OPINION

CALLAHAN, Circuit Judge:

Kauai County passed Ordinance 960 to regulate pesticides and genetically engineered (GE) plants. The Ordinance requires commercial farmers to maintain "buffer zones" between crops to which pesticides are applied and certain surrounding properties, provide notifications before and after applying pesticides, and file annual reports disclosing the cultivation of GE crops. We must decide whether Ordinance 960's pesticide provisions are impliedly preempted by Hawaii state law, as the district court held below.[1] Applying the Hawaii Supreme Court's "'comprehensive statutory scheme' test," *Richardson v. City & Cty. of Honolulu*, 868 P.2d 1193, 1208 (Haw. 1994), we affirm.

## I.

### A.  Plaintiffs' farming operations on Kauai

Plaintiffs-Appellees Syngenta Seeds, Inc., Syngenta Hawaii, LLC, Pioneer Hi–Bred International, Inc., Agrigenetics, Inc., and BASF Plant Science LPs are companies that supply seed for GE plants. Plaintiffs grow a variety of GE seed crops on Kauai, including corn, soybeans, canola, and rice. As further explained in our concurrently filed opinion in *Atay v. County of Maui*, No. 15-16466, such GE crops have numerous important uses and play a major role in our nation's food supply. However, GE crops also

---

[1] We address state preemption of Ordinance 960's GE crop notification requirement in a memorandum disposition filed concurrently with this opinion.

present several well-documented economic and environmental risks.

This case arises primarily from concern about Plaintiffs' use of insecticides, herbicides, and fungicides (collectively pesticides) in their farming operations on Kauai. They use both general use pesticides (GUPs), which under federal and state law may be applied by anyone in accordance with label instructions, and restricted use pesticides (RUPs), which may only be applied by applicators certified by the State or persons under their direct supervision. *See* 7 U.S.C. § 136i. Pesticides are useful for controlling pests and thus increasing crop yields, but their application can have detrimental effects on humans and the environment. For example, with respect to human health impacts, some studies have found that long-term exposure to some pesticides may increase the risks of diseases, including cancer, autism, Parkinson's disease, and childhood leukemia. With respect to environmental impacts, studies have found that some pesticides can harm insects and native plants, alter soil ecology, and increase the number and prevalence of herbicide-resistant pests.

Kauai residents have reported experiencing medical symptoms due to contact with pesticides applied on Plaintiffs' farms. Additionally, a University of Hawaii study detected pesticides in indoor and outdoor air samples collected at a Kauai middle school, albeit at concentrations "well below health concern exposure limits or applicable screening levels."

## B. Kauai County Ordinance 960

In 2013, the Kauai County Council passed Ordinance 960 in order to "inform the public, and protect the public from any

. . . negative impacts on the health and natural environment of the people and place of the County" associated with commercial farming operations, including the use of pesticides. Kauai County Code (KCC) § 22-23.2.[2] Relevant here, the Ordinance imposes several requirements on "commercial agricultural entities" (CAEs) in connection with the application of RUPs in Kauai.[3]

The Ordinance's notification provisions require CAEs to make notifications before and after applying RUPs. *Id. § 22-23.4(a).* Specifically, the "worker protection" provision requires CAEs to post warning signs that comply with U.S. Environmental Protection Agency guidelines twenty-four hours prior to the application of a pesticide, during application, and after application for the "restricted-entry period" established by the EPA. *Id.* § 22-23.4(a)(1). The "Good Neighbor" provision requires CAEs to send weekly "Good Neighbor Courtesy Notices" to interested beekeepers and people who own or occupy property within 1,500 feet of the property where the pesticide will be applied. The notices must address the pesticide to be used, its active ingredient, and the date, time, and field number of its use. *Id.* § 22-23.4(a)(2). Following the application of RUPs, the Ordinance also requires CAEs to submit to Kauai's Office of Economic Development and post online weekly "public disclosure

---

[2] The bill was originally introduced in June 2013 as Bill 2491, enacted as Ordinance 960, and codified as KCC § 22-23.1–23.8 (2014).

[3] A CAE is defined as "a firm, corporation, association, partnership, or any organized group of persons . . . engaged in growing, developing, cultivating, or producing agricultural products." KCC § 22-23.3. The pesticide provisions only apply to CAEs that purchased or used in excess of five pounds or fifteen gallons of any single RUP during the prior calendar year.

reports" "compiling the actual application of all pesticides during the prior week." *Id.* § 22-23.4(a)(3). These reports must detail the date and time of application, the field number and total acreage to which the pesticide was applied, the pesticide's trade name, EPA registration number, and active ingredient, the gallons or pounds of the pesticide used, and the temperature, wind direction, and wind speed at the time of application. *Id.*

In addition to these notification requirements, Ordinance 960 requires CAEs to establish "buffer zones" between crops to which RUPs are applied and certain surrounding properties, such as schools and waterways.[4] *Id.* § 22-23.5(a). The buffer zone's size varies depending on the type of neighboring property.

Finally, Ordinance 960 requires the County to complete an Environmental and Public Health Impact Study (EPHIS) to address "environmental and public health questions related to large-scale commercial agricultural entities utilizing pesticides and genetically modified organisms." *Id.* § 22-23.6. The EPHIS may recommend "possible actions the County may take in order to address any significant effects, public health impacts, or both." *Id.* § 22-23.6.

"[A]ny person, firm, or corporation" violating Ordinance 960 is subject to a civil fine of $10,000 to $25,000 per day, per violation. *Id.* § 22-23.7(a). Additionally, violators are

---

[4] While subsections (1) and (2) suggest that "no crops" may be grown in the buffer zones, prefatory section (a) and the provision's title make clear that the provision does not bar all crops from being grown in buffer zones, but only those to which pesticides are applied. KCC § 22-23.5(a).

guilty of a misdemeanor punishable by a fine of up to $2,000 or a year imprisonment for each offense. *Id.* § 22-23.7(b).

After the County Council passed Ordinance 960, the Mayor of Kauai vetoed it. The Mayor explained that he "agree[d] fully with the general intent of [the] bill," including the pesticide notification and EPHIS provisions. However, he did not support the buffer-zone provision and, citing a legal opinion by the County Attorney, concluded "that Kauai does not currently have the legal authority to enact most of what is contained" in the bill. On November 16, 2013, the County Council overrode the veto and enacted Ordinance 960 into law.

## C.  Procedural History

On January 10, 2014, Plaintiffs sued the County of Kauai in district court challenging Ordinance 960. As subsequently amended, Plaintiffs' complaint asserted thirteen claims for relief and sought a declaratory judgment that the Ordinance is invalid under federal, state, and county law, and an injunction against its enforcement. Relevant here, the first claim asserted that state law impliedly preempts the Ordinance's pesticide provisions. A coalition of Ka Makani Ho'opono, the Center for Food Safety, the Pesticide Action Network North America, and the Surfrider Foundation intervened on behalf of the County.

On August 25, 2014, the district court granted in part and denied in part the cross-motions for summary judgment. *Syngenta Seeds, Inc. v. Cty. of Kauai*, No. CIV. 14-00014 BMK, 2014 WL 4216022 (D. Haw. Aug. 25, 2014). While emphasizing that its decision "in no way diminishes the health and environmental concerns of the people of Kauai,"

the court concluded that Ordinance 960's pesticide provisions are impliedly preempted by state law. *Id.* at \*1. The court acknowledged that the County has authority under state law to regulate agricultural activities, *id.* at \*3–4, but found the pesticide provisions preempted because they address the same subject matter regulated by a comprehensive statutory scheme that the Hawaii legislature intended to be uniform and exclusive. *Id.* at \*7–9. The district court declined to certify the implied preemption question to the Hawaii Supreme Court. *Id.* at \*15. The County and Defendant-Intervenors (collectively Defendants) timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II.

On appeal, the County and Defendant-Intervenors contend that the district court erred in finding Ordinance 960's pesticides provisions impliedly preempted by state law. They also argue that the district court erred in denying their motion to certify the implied preemption issue to the Hawaii Supreme Court and, alternatively, ask us to certify the issue. We review the district court's grant of summary judgment on preemption grounds *de novo*, *Wolfe v. BNSF Ry. Co.*, 749 F.3d 859, 863 (9th Cir. 2014), and a decision not to certify a state-law question for abuse of discretion, *Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1009 (9th Cir. 2009).

## A. Implied state preemption analysis under Hawaii law

The state preemption question before us stems from HRS § 46-1.5(13), which delegates to counties "the power to enact ordinances deemed necessary to protect health, life, and property . . . on any subject or matter not inconsistent with, or tending to defeat, the intent of any state statute . . .

disclos[ing] an express or implied intent that the statute shall be exclusive or uniform throughout the State."**[5]** The Hawaii Supreme Court has ruled that a county ordinance issued pursuant to section 46-1.5(13) is invalid if it conflicts with state law or legislates in a field that the legislature reserved for uniform and exclusive state regulation. *Richardson*, 868 P.2d at 1209. Only the second type of preemption, called field preemption, is at issue here: Plaintiffs argue that Ordinance 960 impermissibly regulates pesticides, which is a subject that the Hawaii legislature reserved for exclusive treatment by the State.

Hawaii courts apply a "'comprehensive statutory scheme' test" to decide field-preemption claims under HRS § 46-1.5(13). *Pac. Int'l Servs. Corp. v. Hurip*, 873 P.2d 88, 94 (Haw. 1994). Under this test, a local law is preempted if "it covers the same subject matter embraced within a comprehensive state statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state." *Richardson*, 868 P.2d at 1208–09; *see also Citizens Utils. Co. v. Cty. of Kauai*, 814 P.2d 398, 400 (Haw. 1991). Courts frequently treat this test as involving several overlapping elements, including showings that (1) the state and local laws address the same subject matter; (2) the state law comprehensively regulates that subject matter; and (3) the legislature intended the state law to be uniform and exclusive. *See, e.g.*, *Stallard v. Consolidated Maui, Inc.*, 83 P.3d 731, 736 (Haw. 2004); *Richardson*, 83 P.3d at 1209.

The Hawaii Supreme Court has emphasized that the "critical determination to be made" is "whether the statutory

---

**[5]** The Hawaii Supreme Court has held that the law contains a drafting error and must be read as modified above. *Richardson*, 868 P.2d at 1207.

scheme at issue indicate[s] a legislative intention to be the exclusive legislation applicable to the relevant subject matter." *Hurip*, 873 P.2d at 94. Thus, even where a local law addresses a subject covered by a comprehensive and uniform state statutory scheme, the local law is not preempted where the state scheme does not evince the legislature's intent to be exclusive. *Id.* (finding that the legislature intended a state law only "to establish a *minimum* level of insurance protection").

The Parties dispute how clear of a showing of legislative intent to preempt is required for a local law to be deemed invalid. Plaintiffs contend that, unlike federal law, there is no presumption against preemption under state law because Hawaii counties only have authority delegated to them by the State. Defendants contend that there is a presumption against state preemption of local laws, and thus the legislature's intent to preempt must be "clear" in order for a local law to fail. They argue that this presumption is particularly strong where, as here, a local government regulates land use or another area over which it traditionally has exercised control.

The Hawaii Supreme Court has not squarely addressed whether there is a presumption against state preemption. It is true that there is no presumption of dual sovereignty between the State and the counties, because counties, unlike states, lack inherent or residual authority. *In re Application of Anamizu*, 481 P.2d 116, 118 (Haw. 1971). However, the Hawaii Supreme Court has presumed that a county's exercise of police power is within its delegated authority so long as the legislature did not "clearly intend[] to preempt the field of regulation." *Haw. Gov't Employees' Ass'n v. Maui*, 576 P.2d 1029, 1038 (Haw. 1978). Thus, where a county's exercise of police power is at issue, the showing of legislative intent

necessary for state law to preempt local law under Hawaii's preemption analysis is similar to, if perhaps not quite as demanding as, the showing required for purposes of federal preemption, a "'clear and manifest purpose' to pre-empt local authority." *See Wisc. Public Intervenor v. Mortier*, 501 U.S. 597, 607 (1991).

The Parties also dispute whether the Hawaii Constitution's conservation clause alters the preemption analysis where local laws aimed at conserving and protecting the environment are at issue. The County contends that Article XI, § 1's directive that "the State and its political subdivisions shall conserve and protect Hawaii's natural beauty and all natural resources" compels it to regulate pesticide use, and cannot be overcome by state statute. Defendants support their argument with *Robinson Township v. Pennsylvania*, where the Pennsylvania Supreme Court found that a state law expressly preempting local oil and gas regulations impermissibly abrogated "constitutional commands regarding municipalities' obligations and duties to their citizens" under the Pennsylvania Constitution. 83 A.3d 901, 977 (Pa. 2013).

We are not persuaded. Hawaii law is clear that counties lack inherent authority under the Hawaii Constitution. *Haw. Gov't Employees' Ass'n*, 576 P.2d at 1038; *In re Application of Anamizu*, 481 P.2d at 118. It follows that counties have no power to conserve the public trust unless the State has delegated to them the authority to do so. As noted, under HRS § 46-1.5(13), counties are not permitted to use their police power to enact ordinances that conflict with state law or intrude upon areas expressly or impliedly reserved for state regulation. In other words, the conservation clause may obligate counties to use their authority to conserve public-

trust resources, but it does not permit counties to exercise power that the State has not granted them. The provision therefore is irrelevant to the question presented in this case: whether Ordinance 960 is beyond the County's police power under HRS § 46-1.5(13) because it is impliedly preempted by state law. We turn to that question now.

## B. The Hawaii Pesticides Law preempts Ordinance 960's pesticide provisions.

Under Hawaii's comprehensive statutory scheme test, the question presented is whether Ordinance 960's pesticides provisions cover the same subject matter as state law that creates a comprehensive regulatory scheme and discloses clear legislative intent to be uniform and exclusive of supplemental local regulation.

### 1. Ordinance 960's pesticide provisions and the Hawaii Pesticides Law address the same subject matter.

Ordinance 960 imposes pesticide notification requirements and mandates "pesticide buffer zones." KCC § 22-23.5(a). As detailed below, the Hawaii Pesticides Law and its implementing rules also regulate pesticides, including by imposing notification requirements and conditions of use, such as locations of permissible use. *See* HRS Ch. 149A.

Part III of the Hawaii Pesticides Law regulates the use of pesticides, including where pesticides may be applied. HRS §§ 149A-31–149A-37. For example, HRS § 149A-31 lists "prohibited acts." The provision prohibits use "of any pesticide in a manner inconsistent with its label," with several enumerated exceptions. The provision makes clear that

pesticide labels may specify "a crop, animal, *or site*" to which pesticides may be applied. *Id.* § 149A-31(1)(B) (emphasis added). The provision also prohibits application of RUPs except by certified pesticide applicators or someone under their direct supervision, *id.* § 149A-31(3), and bars application of any pesticides through particular devices, *id.* § 149A-31(6).

This list of prohibited acts in Part III is not exhaustive. Rather, section 149A-32.5 vests the chairperson of the State's Board of Agriculture with the authority to "suspend, cancel, or restrict the use of certain pesticides or specific uses of certain pesticides when the usage is determined to have unreasonable adverse effects on the environment." *See also id.* § 149A-19 (directing the Board of Agriculture to "establish a system of control over the distribution and use of certain pesticides and devices purchased by the consuming public"). Section 149A-33 also authorizes the Hawaii Department of Agriculture to enact rules to carry out the Hawaii Pesticides Law. This authority includes but is not limited to the power to "establish limitations and conditions for the application of pesticides" by equipment and to "establish, as necessary, specific standards and guidelines which specify those conditions which constitute unreasonable adverse effects on the environment." *Id.* § 149A-33.

Pursuant to this authority, the Department of Agriculture has enacted additional rules addressing pesticide use, including locations of use. A Department of Agriculture rule requires "directions for use" on labels to address, among other things, "[r]equired intervals between application and harvest of food or feed crops," "rotational crop restrictions," and "[w]arnings as required against use on certain crops,

animals, objects, or in or adjacent to certain areas."  HAR § 4-66-23(9)(A), (C).

As these provisions show, Hawaii law addresses the same subject matter as Ordinance 960's buffer-zone provision: permissible areas of pesticide application.

The Hawaii Pesticides Law also addresses the specific subject of notification and record-keeping requirements.  For example, the law establishes notification and record-keeping requirements in connection with the sale of pesticides.  HRS § 149A-15.5 requires retailers to "post a warning sign with respect to the sale of pesticides" to address "proper handling, storage, and disposal of all pesticides sold" and "[e]mergency telephone numbers to call in case of poisoning from the pesticides."  Persons permitted to sell RUPs are required to "keep records of the individual sales of these pesticides."  *Id.* § 149A-17.  Under the Department of Agriculture's rules, licensed dealers are further required to "keep a record of each sale, distribution, delivery, theft, spill, or any other activity affecting the amount of [RUPs] and pesticides requiring an annual permit."  HAR § 4-66-53.

State law also establishes notification and warning requirements in connection with the application of pesticides.  In addition to requiring "warnings and precautionary statements" on labels, *see* HAR §§ 4-66-17, 4-66-19, a Department of Agriculture rule requires that "[c]ommercial applicators applying any pesticide in agricultural operations must . . . furnish a written record . . . to the agricultural

employer before the pesticide is applied," *id.* § 4-66-62(c).**[6]** The Department of Agriculture has also enacted reporting and approval requirements before RUPs may be applied by aircraft. *Id.* § 4-66-64.

State law addresses post-application record keeping as well.   The legislature delegated to the Department of Agriculture the authority to "establish, as necessary, record keeping requirements for pesticide use by applicators." HRS § 149A-33.  Pursuant to this authority, the agency enacted rules requiring pesticide applicators to "keep records of all applications of [RUPs] applied." HAR § 4-66-62(a). These reports must contain fourteen categories of information. *Id.* § 4-66-62(b).     Section 149A-31.2 further directs the Department of Agriculture to publish online RUP "records, reports, or forms submitted" to it, with limited exceptions.

As these provisions show, Hawaii law addresses the same subject matter as Ordinance 960's pesticide notification provisions: warnings regarding the application of RUPs.

### 2.   The State's scheme for the regulation of pesticides is comprehensive.

Defendants argue that even if Hawaii law and Ordinance 960 address the same subject matter, the state law's treatment of pesticides is not comprehensive.   They contend that the

---

**[6]** This notice must address "(1) The specific location and description of the treated area; (2) Time and date of application; (3) Product name, EPA registration number, and active ingredient(s); (4) Restricted entry interval; (5) Whether posting and oral notification are required; and (6) Any other product-specific requirements on the product labeling concerning protection of workers or other persons during or after application." *Id.*

state requirements are "procedural and remedial," while Ordinance 960 is "substantive and prophylactic."

Even if regulatory fields may be parsed so finely in determining whether their occupation by the State is comprehensive, Defendants' argument fails. State law imposes "substantive and prophylactic" measures. For example, state law regulates a pesticide's effects on human health and the environment through labeling and licensing requirements. *See, e.g.*, HRS §§ 149A-11, 149A-31. As mentioned, "directions for use" on pesticide labels must include "[l]imitations or restrictions on use required to prevent unreasonable adverse effects on humans or the environment," including "[w]arnings as required against use . . . in or adjacent to certain areas." HAR § 4-66-23(9). Such restrictions are not simply procedural or informational; they impose restrictions on pesticide use the violation of which may result in civil and criminal penalties, as well as the suspension or revocation of licenses for pesticide application and sale. *See, e.g.*, HRS § 149A-41. State law also requires pre-application warnings, which, like use and licensing regulations, are clearly "prophylactic" in nature. *See* HAR §§ 4-66-62(c), 4-66-64.

More generally, the state statutory scheme's breadth of treatment of pesticides demonstrates its comprehensiveness. The Hawaii Pesticides Law and its implementing rules address the entire life cycle of pesticides, including research/experimentation, transportation, storage, sale, use, and disposal. *See, e.g.*, HRS § 149A-37 (addressing research and experimental work); *id.* §§ 149A-11–149A-23 (addressing transportation, storage, and sale); *id.* §§ 149A-31–37 (addressing use); HAR § 4-66-54 (addressing disposal). State law also creates a system for investigation

and enforcement of violations.  *See* HRS §§ 149A-21, 14A-36, 149A-41; HAR §§ 4-66-32.1, 4-66-66.1.

We find that the state's statutory scheme for pesticides is comprehensive.

### 3. The legislature clearly intended for the State's regulation of pesticides to be uniform and exclusive.

Finally, it is clear that the Hawaii legislature intended for the State's regulation of pesticides to be uniform and exclusive of additional, local rules.

The pervasiveness of the statutory scheme, which regulates in detail the full life cycle of pesticides, creates a reasonable inference that the legislature left no room for counties to impose further regulations.  *See In re Application of Anamizu*, 481 P.2d at 119 (finding legislative intent to preempt "apparent from the pervasiveness of the . . . statutory scheme").    The Hawaii Pesticides Law's pervasiveness differentiates the law from the federal pesticides law, the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), which the Supreme Court found did not preempt local laws in *Mortier*.  In *Mortier*, the Supreme Court observed that FIFRA "leaves substantial portions of the field vacant, [including] an affirmative permit scheme for the actual use of pesticides." 501 U.S. at 613.  By contrast, the Hawaii Pesticides Law establishes a permit scheme for actual use and does not leave vacant any other substantial part of the field of pesticides regulation.

Moreover, the Hawaii legislature stated its intention for the Hawaii Pesticides Law to be uniform in HRS § 149A-19,

which is entitled "Determination; rules; uniformity."   To achieve the stated goal of uniformity, the legislature directed the Board of Agriculture to "adopt rules applicable to and in conformity with the primary standards established by this chapter or as prescribed by FIFRA with respect to pesticides." HRS § 149A-19(c).[7]  The legislature also expressed the goal of uniformity in directing the Department of Agriculture to cooperate with other state agencies and "the federal government for the purpose of carrying out this chapter and securing *uniformity* of rules" governing pesticides.   HRS § 149A-23 (emphasis added).

The Hawaii legislature's goal of establishing a uniform system of pesticide control and its delegation, in furtherance of this goal, of rulemaking and licensing authority to the Department of Agriculture clearly evince an intent to preempt local regulation.   As the Hawaii Supreme Court has explained, such a state statutory scheme cannot reasonably be interpreted to allow for supplemental local regulation because differing local laws would defeat the goal of uniformity.  For example, in *In re Application of Anamizu*, the Hawaii Supreme Court concluded that a city ordinance regulating contractors was preempted by a state statutory scheme that "vested [a state board] with broad powers relative to the licensing and regulating of contractors."   481 P.2d at 118. The court reasoned that "[t]o hold otherwise would be to allow the intercity flow of contracting services to be

---

[7] This provision is contained in Part II of the Hawaii Pesticides Law, which focuses on pesticide sales.  However, the provision also addresses the Board of Agriculture's authority to, among other things, "establish a system of control over the . . . *use* of certain pesticides and devices."  *Id.* § 149A-19(a)(1) (emphasis added).  Therefore, the fact that the legislature did not expressly repeat its goal of uniformity in Part III, which focuses on pesticide use, is without significance.

impaired, thereby severely diluting the value of a uniform state licensing system" that the legislature sought to realize. *Id.* at 119.

Like the law at issue in *Application of Anamizu*, the Hawaii Pesticides Law creates a comprehensive statutory scheme, commits rulemaking and licensing authority to carry out the scheme to a state agency, and discloses a goal of uniformity. Moreover, the statute and the Department of Agriculture's implementing rules address the specific subjects addressed by Ordinance 960—pesticide notification requirements and conditions of permissible use, including locations of use. In these circumstances, interpreting the Hawaii Pesticides Law to allow supplemental local regulations would impermissibly undermine the legislature's express goal of uniformity.

We note that the Hawaii Pesticides Law does allow for local variations in the regulation of pesticides. However, further evidencing an intent that the State's control be exclusive, the legislature directs the Department of Agriculture to address the need for any local variations. For example, HRS § 149A-22, gives the Board of Agriculture "authority to adopt rules . . . to develop and implement state programs for registration of pesticides for special local needs." This provision further distinguishes the Hawaii Pesticides Law's preemptive effect from FIFRA's. FIFRA and its implementing regulations expressly allow states to impose additional restrictions or authorize additional uses of pesticides "to meet special local needs." 7 U.S.C. § 136v. Unlike FIFRA, the Hawaii Pesticides Law commits this role to the Department of Agriculture, while providing counties with avenues for input into the agency's regulatory process. *See* HRS § 26-16 (establishing the Board of Agriculture and

specifying that it will include residents of Hawaii, Maui, and Kauai); HRS § 149A-22 (authorizing the Board of Agriculture "to adopt rules . . . to develop and implement state programs for registration of pesticides for special local needs and issuance of experimental use permits").

Our conclusion that the legislature intended for the Hawaii Pesticides Law to be uniform and exclusive of state control is not undermined by the DOA's power "to cooperate with and enter into agreements with any agency of the State, the federal government, or any other agency" in carrying out the law. *Id.* § 149A-35. This provision does not authorize counties to issue supplemental regulations of pesticides. Rather, read in context of the larger statutory scheme, which clearly demonstrates legislative intent to create a uniform system of pesticide regulation administered by the Department of Agriculture, we interpret the provision to authorize the counties to assist in enforcing regulations of pesticides established by the State.[8]

Nor do Intervenors' arguments based on Hawaii's litigating position in *Mortier* and legislative inaction undermine our interpretation of the Hawaii Pesticides Law's preemptive effect. Intervenors argue that an amicus brief filed by Hawaii in *Mortier* evidences that the State never intended to prevent counties from regulating pesticides. *See*

---

[8] Similarly, Intervenors stretch too far in arguing that the use of the term "any law" rather than "this chapter" or "state or federal law" in a provision addressing the suspension and revocation of permits "must be assumed to include county law." *See* HRS § 149A-18 ("Any permit . . . may be suspended or revoked by the department . . . for violation of . . . any law or rule pertaining to the sale of pesticides."). Read in context, "any law" cannot reasonably be read to show legislative intent to allow for local pesticide regulation.

*Mortier*, No. 89-1905, 1991 WL 11007857 (Appellate Br.) (Feb. 28, 1991).   The litigating position of the Hawaii attorney general in *Mortier*, however, is of little or no relevance to the preemptive effect of the Hawaii Pesticides Law.   The brief was joined by ten other states and did not interpret the preemptive effect of Hawaii law.   Rather, the brief argued that FIFRA leaves room for state and local regulation of pesticides, a point that is not disputed.

Intervenors also argue that Hawaii's legislative inaction following *Mortier* demonstrates the absence of legislative intent to preempt local regulation of pesticides.   Following the Supreme Court's decision in *Mortier*, bills to preempt local pesticide regulation were introduced in the Hawaii House and Senate.   Intervenors contend that the fact that the Hawaii legislature did not pass the bills, unlike the legislatures of many other states, undermines any inference of preemptive intent from existing law.

In *Hurip*, the Hawaii Supreme Court relied on post-enactment legislative history in assessing legislative intent. 873 P.2d at 96–97.   However, *Hurip* relied on the legislative history of an amendment to a state law, not on post-enactment legislative inaction.   The U.S. Supreme Court and the Hawaii Supreme Court have found the second type of evidence generally "lacks persuasive significance" because "several equally tenable inferences may be drawn from such inaction." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 187 (1994); *Richardson*, 868 P.2d at 1211 n.25 (finding a "long history of considering, and rejecting, proposed bills . . . merely begs the question"); *Tax Appeal of Dir. of Taxation v. Med. Underwriters of Cal.*, 166 P.3d 353, 365 n.11 (Haw. 2007) ("[L]egislative inaction is not a cogent expression of legislative intent.").   No

circumstances endow the Hawaii legislature's inaction with significance here.

In sum, we find that the Hawaii Pesticides Law comprehensively regulates pesticides and creates a clear inference of legislative intent to preempt local regulations of pesticides. Accordingly, applying Hawaii's comprehensive statutory scheme test, we hold that Ordinance 960's pesticide provisions are impliedly preempted by Hawaii law and beyond the County's power under HRS § 46-1.5(13).

## C. The district court did not abuse its discretion in denying Defendants' motion to certify the preemption issues to the Hawaii Supreme Court.

Defendants argue that the district court erred in declining to certify the state implied preemption questions presented to the Hawaii Supreme Court. Alternatively, Defendants ask us to certify the implied preemption questions.

We find that the district court did not abuse its discretion in denying Defendants' motion to certify. We similarly find that while the Hawaii Supreme Court has not applied its preemption test to the specific laws at issue, certification is unnecessary because the State's test for implied state preemption is "rather well-defined." *Puyallup Indian Tribe v. Port of Tacoma*, 717 F.2d 1251, 1263 n.14 (9th Cir. 1983); *see also Pai 'Ohana v. United States*, 875 F. Supp. 680, 700 (D. Haw. 1995), *aff'd sub nom. 'Ohana v. United States*, 76 F.3d 280 (9th Cir. 1996) ("[W]here there is sufficient state law to enable this court to make an informed decision on [the] issues certification is inappropriate.") (internal quotation marks omitted).

## III.

We affirm the district court's conclusion that the Hawaii Pesticides Law impliedly preempts Ordinance 960's pesticide provisions.  We affirm the district court's conclusion that Hawaii law impliedly preempts Ordinance 960's GE crop reporting provision in a concurrently filed memorandum disposition.  We also affirm the district court's denial of Defendants' motion to certify.

**AFFIRMED**.